299 So.2d 138 (1974)
Marvin I. BAKER, Appellant,
v.
Susan S. BAKER, Appellee.
No. 73-1194.
District Court of Appeal of Florida, Third District.
July 23, 1974.
Rehearing Denied September 6, 1974.
Carr & Warren, Miami, for appellant.
Sinclair, Louis & Siegel, Miami, for appellee.
Before PEARSON, HENDRY and HAVERFIELD, JJ.
HENDRY, Judge.
The appellant-husband seeks review of a final judgment of dissolution of marriage. He contends the trial court abused his discretion in awarding rehabilitative alimony to the appellee-wife for five years and in awarding the husband's interest in the marital residence to the appellee as lump sum alimony. We affirm.
The husband petitioned for a dissolution of the marriage on June 1, 1972 after the *139 couple had resided together in wedlock for almost ten years. The wife answered the petition, conceding that the marriage was irretrievably broken. She counterpetitioned for dissolution and prayed that the court award her, inter alia, alimony and the husband's interest in the marital home located in Coconut Grove.
After extensive pre-trial proceedings, the cause came on for a final hearing before the capable and experienced trial judge. As revealed by the voluminous record on appeal in this case, the primary dispute focused upon a resolution of the property rights between the parties.
The husband is a medical doctor, certified in radiology and nuclear medicine. He is 41 years old. The wife is currently a medical student at Tulane University in New Orleans. She also has a master's degree in economics from Columbia University, and for over a year she worked as an economist. She last worked as an economist in 1965, earning $8,000 a year. She testified that she worked in order to assist her husband who at that time was a resident physician earning very little money. She also testified that she could not return to work as an economist because she has not remained abreast in the field, and "frankly, I would rather be dead than have to work as an economist again. I hated it."
As often is the case in domestic relations proceedings, the testimony respecting the husband's assets and income and the wife's financial needs was not totally clear and uncontradicted. However, the trial judge entered an eight-page order of final judgment, containing complete findings based on the evidence before him and necessarily resolving the conflicts.
It is the appellant's burden on this appeal challenging the alimony provisions of the judgment to clearly demonstrate that the trial court's findings and conclusions are incorrect and that the court abused his discretion by entry of the alimony awards. E.g., Linares v. Linares, Fla. App. 1974, 292 So.2d 63; Maroun v. Maroun, Fla.App. 1973, 277 So.2d 572; King v. King, Fla.App. 1973, 271 So.2d 159; Fishman v. Fishman, Fla.App. 1971, 245 So.2d 258. Our review of the record convinces us that the trial judge's findings are supported by substantial competent evidence.
The findings include a full description of the husband's financial situation. Dr. Baker is one of 63 doctors involved in a partnership which owns the land and buildings rented to the Palmetto General Hospital. These doctors and their wives executed a note and mortgage in excess of four million dollars on this property. The court has directed Dr. Baker to hold his ex-wife harmless in connection with this note.
The court next reviewed Dr. Baker's tax returns for six years, the last of which (his 1972 return) reflected an income of over $134,000. Dr. Baker also receives many benefits not presently declared as income and which are derived from his interest in his professional association. These include his interest in a pension and profit sharing plan, his use of a Mercedes-Benz automobile, his entertainment allowance, and his insurance benefits. The court found that the doctor's life is insured by various policies in the amount of $410,000.
In addition, the court specifically found that the husband grossly understated his net worth in a financial affidavit prepared shortly before trial. The husband stated his net worth to be $121,000; his wife estimated it to be at least $500,000.
For example, the husband's accountant, Mr. Lee F. Emerson, testified that the husband's "vested" interest in the pension and profit sharing plans, which Dr. Baker contended represented the value of his interest, was only the amount of money invested under the plans. He stated the actual total value of the husband's cash contribution to be $77,130. The amount invested was only thirty per cent of this figure.
The court further recited assertions by Mrs. Baker that her husband undervalued *140 his interest in his professional association, in the hospital partnership and in his interests in oil ventures and land trusts. Also, a 30% bad debt factor which the doctor gave for his P.A. was disputed as being unrealistic.
It was also acknowledged by the court that since Dr. Baker instituted the present action to dissolve his marriage, his standard of living apparently has not suffered. He purchased a 1/3 interest in a $31,000 yacht and pledged $10,000 to the Miami Philharmonic.
During the marriage, the parties enjoyed an affluent standard of living. Their Coconut Grove home is valued at $105,000, plus $18,000 in furnishings. Mrs. Baker, like her husband, drove an expensive foreign car, and she wore a Somali leopard coat which her husband gave to her as a gift as well as valuable jewelry and fine clothing. Dr. Baker was a patron of the Philharmonic and a collector of expensive wine and high fidelity equipment.
The court further found that Mrs. Baker's standard of living had diminished since her husband filed for dissolution of marriage. The court stated that the wife had to borrow $12,000 to maintain herself.
There was also testimony concerning a transfer by Dr. and Mrs. Baker of a 10% interest in real property located in Jacksonville to Dr. Baker's father. The trial judge concluded that this transaction amounted to "unconscionable overreaching" by the husband of his wife.
Undeniably, the court based its conclusion mainly on the fact that the transfer occurred on May 21, 1972, less than two weeks before Dr. Baker filed for dissolution, apparently in contemplation of dissolution of marriage.
In her counterpetition, Mrs. Baker sought to impress a constructive trust on the husband's assets to the extent of the interest which the couple held in the real property. The court noted that Dr. Baker valued the land at $24,000, however, on two financial statements he made to a local bank, the doctor valued the property at $160,000.
The trial judge stated that the equity each party held in the marital home is $21,750 with an existing mortgage of $61,500 on the property. He then entered the following finding, which Dr. Baker by his second point on appeal directly challenges:
"Under the facts of this case, considering the length of the marriage and the respondent's needs and the petitioner's two statements to the First National Bank of Miami of the value of their 10% interest in the Jacksonville property, as being more than three times the respondent's equity in the home and furnishings, the Court finds that it is appropriate and equitable that the house and furnishings (except for petitioner's personal effects) be awarded to her as partial lump sum alimony."
The husband attacks this finding as an improper award of partial lump sum alimony because he claims it is apparent the award constituted a form of restitution to the wife for money due from the husband and that the award imposes a penalty upon the husband. This contention is without merit.
A further finding by the court states that both parties argued that lump sum alimony would be proper under the circumstances of the ten-year marriage in the case at bar. And, the court recognized what are the clear requirements the court must follow in awarding alimony, citing Firestone v. Firestone, Fla. 1972, 263 So.2d 223; Sharpe v. Sharpe, Fla.App. 1972, 267 So.2d 665. These criteria are the husband's ability to pay the alimony award coupled with the needs of the wife, taking into account the standard of living shared by the couple during their marriage. See Firestone v. Firestone, supra; Dash v. Dash, Fla.App. 1973, 284 So.2d 407; Arnold v. Arnold, Fla.App. 1974, 292 So.2d 384.
*141 The record in this case demonstrates that the trial court carefully considered all the criteria in awarding the husband's interest in the marital home to the wife.
We do not think that the judge's reference in the challenged finding to the Jacksonville property makes it at all "apparent," as the husband suggests, that he was ordered to convey his interest in the marital home either as punishment or as restitution to the wife.
Probably, as the court indicated, the unfair advantage which the court found the husband had taken of the wife was a factor which the court considered in awarding partial lump sum alimony. But, for the court to have considered it is not improper.
The statute pertaining to alimony provides that the court may consider "any factor" necessary to do equity and justice between the parties in awarding alimony. See Fla. Stat. § 61.08(2), F.S.A.; First National Bank v. Ford, Fla. 1973, 283 So.2d 342; Brook v. Brook, Fla.App. 1974, 289 So.2d 766.
The husband also challenges the court's award of rehabilitative alimony to the wife for five years in the sum of $1,750 per month. Dr. Baker argues that the award is excessive and relies on Maxwell v. Maxwell, Fla.App. 1971, 251 So.2d 902. In Maxwell, our sister court in the first district agreed with the husband that under the facts presented the final judgment passed "a sentence of death upon the goose they lays the golden eggs." Also, the court determined that the record in that case did not support "taking the hide of the sheep when shearing him." The facts and circumstances of the instant case, of course, are different, and we think distinguishable. We hold that the record in this case does support both an award of rehabilitative alimony for five years as well as the award of partial lump sum alimony.
Here the evidence offered indicated that the wife suffers serious psychiatric problems which will require future treatment for an indefinite time. She also suffers other severe medical problems requiring attention. Moreover, as previously mentioned, Mrs. Baker is now attending medical school, an expensive venture. The court made the following finding:
"In order to provide respondent with an opportunity to rehabilitate herself and to maintain some bare semblance of the standard of living established by her husband and to protect her for the immediate future as to her medical problems, which are great, the Court finds that she should also receive a further rehabilitative alimony award. The Court finds that an award to be paid at the rate of one thousand, seven hundred and fifty dollars ($1,750.00) monthly is an appropriate amount on the basis of testimony, and that this will be needed for five years. At petitioner's 1972 income level of approximately $133,000.00, the actual annual cost of this alimony to the petitioner would be $8,396.20, based upon analysis of his tax payments."
This finding reflects the diligent effort undertaken by the trial court to weigh carefully both the husband's ability to pay alimony and the wife's needs therefor in the light of the standard of living enjoyed during marriage. We also point out that Section 61.08(1) provides that the trial court may award alimony in periodic payments or in lump sum or both. See Bosem v. Bosem, Fla. 1973, 279 So.2d 863.
Therefore, for the reasons stated and upon the authorities cited, the judgment appealed is affirmed.
Affirmed.