334 So.2d 325 (1976)
Tedford J. CANN, Appellant,
v.
Margery M. CANN, Appellee.
No. Z-254.
District Court of Appeal of Florida, First District.
June 30, 1976.
*327 Roy M. Kinsey, Jr., of Kinsey, Troxel & Mann, Pensacola, for appellant.
G. Robert Barron of Smith, Grimsley, Barron & Remington, Fort Walton Beach, for appellee.
BOYER, Chief Judge.
The final judgment entered in the dissolution of marriage action from whence *328 this appeal is taken required the husband, appellant here, to pay alimony the amount of which is not in controversy. The sole issue is whether the alimony should be permanent or rehabilitative.
The final judgment required payment of alimony at the rate of $450.00 per month for a period of 12 months "at which time said alimony shall decrease to the sum of $400.00 per month and shall continue until further order of this Court." It is unclear as to whether the alimony was intended by the learned trial judge as rehabilitative or permanent. Were there no other relevant language in the final judgment, we would be inclined to the view that the concluding words "until further order of this court" were intended to provide a temporary or terminable alimony award; viz: rehabilitative. However, the next paragraph in the final judgment concludes with the words: "In addition, in the event of respondent's death while he is required to make alimony or child support payments under this Order, his estate shall be charged with the liability of such payments." We are of the view that the imposition of liability upon appellant's estate for the payment of the periodic alimony payments requires the construction that the alimony was intended to be permanent as distinguished from rehabilitative. We are therefore presented squarely with the issue as to whether, under the facts of this case, the alimony should have been rehabilitative rather than permanent. The distinction is not without a difference.
Lump sum alimony, sometimes known as alimony in gross, is essentially payment of a definite sum and is in the nature of a final property settlement. Hence, an award of lump sum alimony creates a vested right which survives death (Morris v. Morris, Fla.App. 2nd 1973, 272 So.2d 202) and is not modifiable nor terminable upon the divorced wife's remarriage (Horne v. Horne, Fla.App. 2nd 1974, 289 So.2d 39). Lump sum alimony may consist not only of money, but also or in lieu thereof, real or personal property, such as a marital home. (Vandervoort v. Vandervoort, Fla.App. 3rd 1974, 300 So.2d 694.) Regardless of what form it takes, "* * * Lump sum alimony is justified only where it serves a reasonable purpose, such as rehabilitation, or where the marriage's duration or the parties' financial position would make such an award advantageous to both. The wife's need and the husband's ability are still the correct equation to follow. * * *" (Calligarich v. Calligarich, Fla.App. 4th 1971, 256 So.2d 60, 61).
Although lump sum alimony is distinguished from periodic alimony, lump sum alimony may be paid in installments. (Morris v. Morris, supra) However, in order for it to be categorized as lump sum, it must be for a definite amount and must have some reasonable relationship to the estate of the person upon which it is imposed. (Horne v. Horne, supra; Keller v. Keller, Sup.Ct.Fla. 1974, 308 So.2d 106) A further element of lump sum alimony is that it be awarded only where special equities require it or make it advisable. (Jones v. Jones, Fla.App. 1st 1976, 330 So.2d 536). The requirement that lump sum alimony be based upon special equities must not be confused with an award in a dissolution of marriage action to a spouse who has acquired a special equity in property accumulated during the marriage. Such an award is not alimony. (Eakin v. Eakin, Sup.Ct.Fla. 1958, 99 So.2d 854)
Periodic alimony is an allowance payable at intermittent times (usually by the week or by the month) in a definite amount over a definite or indefinite period of time. An award of periodic alimony is appropriate according to the needs of the spouse requesting alimony and the corresponding ability of the other spouse to pay.
Periodic alimony may be either permanent or rehabilitative. Rehabilitative alimony has been defined as "that amount of money or other things of value reasonably *329 necessary to supplement means already available reasonably required during the post-marriage period to maintain the recipient until he or she is, in the exercise of reasonable efforts and endeavors, in a position of self-support." It has also been defined to mean "alimony paid for the purpose of rehabilitating the spouse to whom it is awarded, such as, financially supporting an ill spouse until health is restored, or financially supporting a spouse until he or she can be trained for employment, or in some circumstances, until the spouse has a reasonable time to recover from the trauma of the dissolution." (Sisson v. Sisson, Fla.App. 1st 1975, 311 So.2d 799 and cases therein cited) Although initially fixed for a specific period, an award of rehabilitative alimony may be either terminated at an earlier date or extended, depending upon a proper showing that the spouse has become rehabilitated earlier than anticipated or has not become rehabilitated through no fault of his or her own. (Lee v. Lee, Fla.App. 2nd 1975, 309 So.2d 26)
Permanent alimony, on the other hand, is an allowance for the support and maintenance of a spouse during his or her lifetime. Its purpose is to provide nourishment, sustenance and the necessities of life to a former spouse who has neither the resources nor ability to be self-sustaining. (Lefler v. Lefler, Fla.App. 4th 1972, 264 So.2d 112) However, "permanent" does not necessarily mean "forever". (Ruhnau v. Ruhnau, Fla.App. 1st 1974, 299 So.2d 61)
A significant distinction between rehabilitative alimony and permanent alimony relates to the manner by which it may be terminated. Rehabilitative alimony automatically terminates by expiration of the period fixed in the final judgment or by such subsequent order as may modify the period. (Lee v. Lee, supra) Rehabilitative alimony presupposes the capacity for self-support. (Yohem v. Yohem, Fla.App. 4th 1975, 324 So.2d 160) If the spouse to whom the order of rehabilitative alimony was made can demonstrate a diminished capacity for self-support, then (everything else being equal) a petition for modification should be granted. In contrast, permanent alimony may be terminated only upon proof of a substantial change in circumstances. (Kalmutz v. Kalmutz, Fla.App. 4th 1974, 299 So.2d 30) Remarriage of the party receiving permanent alimony is such a substantial change in circumstances and requires termination of the payments upon proper application to the trial court. (Friedman v. Schneider, Sup.Ct.Fla. 1951, 52 So.2d 420) Remarriage of the recipient also, of course, requires termination of rehabilitative alimony.
Sub judice, were the award of alimony to be construed as being lump sum paid in installments, such would be erroneous inasmuch as a total amount was not fixed and there was no relationship between any specific amount and the estate of appellant. Construing the award as having been intended to be permanent alimony, we find such to have been in error for the reason that the evidence revealed by the record does not sustain an award of permanent alimony. The record reveals that the husband, appellant here, was at the time of the final hearing, a Commander in the United States Navy and had a gross income of over $2,300.00 per month. His testimony was that, having been passed over for promotion three times, the probability of any further advancement is remote, and he will be forced to retire sometime between September of 1978 and June of 1979 at which time his income will drop to $1,200.00 per month. The wife is 41 years old, in good health, and does not suffer from any psychiatric disorders. She has a bachelor's degree in English from the University of North Carolina, and since her marriage has taken courses at the University of West Florida and the University of Maryland Extension in Italy. She was employed prior to the marriage, but has not worked since. She testified *330 that she has attempted to secure employment but has been unsuccessful. She stated that she has no office or secretarial skills and would need to return to college in order to meet the requirements for securing employment as an English teacher. While she expressed the feeling that she should be at home for the benefit of the two children (ages 13 and 15), she also expressed a desire to work if she could find an interesting job.
Under the circumstances, the trial court erred in awarding permanent rather than rehabilitative alimony. As we have previously stated: "The public policy under the new law which the legislature passed and which therefore we must apply seems to be that if the spouse has the capacity to make her own way through the remainder of her life unassisted by the former husband, then the courts cannot require him to pay alimony other than for rehabilitative purposes." (Roberts v. Roberts, Fla. App. 1st 1973, 283 So.2d 396, 397; see also Beard v. Beard, Fla.App. 1st 1972, 262 So.2d 269; and Thigpen v. Thigpen, Fla.App. 1st 1973, 277 So.2d 583) The public policy of the State would be utterly frustrated by an award of permanent alimony where it affirmatively appears that the wife has not only the capacity but also the desire to be self-supporting.
In considering the amount and duration of rehabilitative alimony the trial court has a broad discretion. A wide range of factors may properly be considered. In the instant case, such factors may include the length of time required by the wife to upgrade her educational qualifications in order to secure employment and the necessity of the wife in remaining at home to care for her minor children. On the latter point we reiterate, "* * * We do not now intend, and never have intended, to discourage the role of a mother by the few remaining women in our society who are willing to fulfill that obligation and purpose. * * *" (Ruhnau v. Ruhnau, supra, at page 64) Thus, the trial court may very well, in its discretion, determine that the presence of the mother in the home is so necessary to the well-being of the minor children that an award of rehabilitative alimony may be essential until said children become sui juris. Moreover, as the period of rehabilitative alimony draws to a close, the wife may, upon a showing of diligent effort toward rehabilitation which through no fault of her own has been unsuccessful, petition the trial court for an extension of the rehabilitative alimony or an award of permanent alimony. (See Lee v. Lee, supra)
The wife's petition for attorney's fees and costs incurred pursuant to this appeal is denied.
Reversed and remanded for further proceedings consistent herewith.
COX, JOHN S., Associate Judge concurs.
SMITH, J., dissents.
SMITH, Judge (dissenting):
For four years before the dissolution decree, Commander Cann paid his wife $950 per month to support her and the children, who were 13 and 15 years old when the decree was entered. Under the decree, the children are to remain in their mother's custody and appellant is to pay $250 monthly for each child's support until the child reaches 18, marries, dies, or sooner becomes self-supporting. The chancellor's alimony award of $450 per month for one year and $400 per month thereafter "until further Order of this Court," when added to the child support payments, therefore establishes Commander Cann's payment at the very amount he regularly paid before dissolution. By the present order, his payments will drop to $400 per month in less than five years, when the youngest child reaches eighteen years of age. Appellant's gross income is $2,373 per month. He therefore is asked to live on approximately half his take-home pay while Ms. Cann and the two children live on the other half.
*331 The majority opinion, in its concern that Ms. Cann be formally advised to rehabilitate herself economically, overlooks the impetus toward that end which inheres in the chancellor's decree. It will require Ms. Cann to seek employment within three to five years to augment, for her support and that of either child who may continue to live with her, modest permanent alimony receipts of $400 per month. Commander Cann will then be entitled to military retirement and benefits in the gross amount of $1,200 per month and he will be able to seek other employment. To say that the chancellor's award was excessively burdensome to appellant or indiscriminately generous to Ms. Cann, and so beyond the chancellor's proper discretion, seems to me unjustified. Except to delete appellant's obligation to provide for the continuance of alimony payments beyond his death, Aldrich v. Aldrich, 163 So.2d 276 (Fla. 1964), I would affirm the chancellor's award as being well within the range of alternatives open to his discretion.