345 So.2d 371 (1977)
Margaret Mary PFOHL, Appellant,
v.
Roger Lee PFOHL, Appellee.
No. 76-170.
District Court of Appeal of Florida, Third District.
April 26, 1977.
Rehearing Denied May 23, 1977.
*373 Frates, Floyd Pearson, Stewart, Richman & Greer and James B. Tilghman, Jr., Miami, and Walter D. Crane, Fort Lauderdale, for appellant.
Cypen & Nevins, Miami, for appellee.
Before HAVERFIELD and HUBBART, JJ., and CHARLES CARROLL (Ret.), Associate Judge.
HUBBART, Judge.
This is an action for dissolution of marriage in which the husband was awarded lump sum and rehabilitative alimony as well as attorneys' fees. The wife appeals and the husband cross appeals, raising questions which go to the propriety and sufficiency of such awards.
On May 28, 1966, the parties were married. At the time of the marriage, the wife owned a one third interest in a trucking company given to her by her father, which interest she sold in 1972 for seven million dollars. The husband had no assets going into the marriage except for a one half interest in one hundred shares of Sears Roebuck stock. He had been employed for four and one half years as a toy salesman for Strombecker Toy Co. earning a salary of approximately $9,000-$10,000 a year plus expenses and bonus. He resigned this job after one and a half years of marriage to satisfy the wife's wishes. She did not like his traveling which was necessary to pursue his line of work, and refused to move to New York with him to accept a promotion. Prior to the marriage, he had finished three years of college and received an honorable discharge from the marines. The couple had two sons, now ages 8 and 2.
The parties lived a life of extreme luxury and comfort during a marriage which lasted nine years prior to the parties' final separation. The wife supported the family at first through contributions from her father, and from 1972-75 from her own separate estate.
Both the husband and wife had an unlimited joint checking account. Both had access to the wife's extensive properties: a one hundred acre farm in Elgin, Illinois, purchased for $500,000; a five bedroom house in Chicago; and two homes in Bal Harbour, Florida, purchased for $140,000 and $60,000 respectively. Both had access to a six bedroom home and an eighty acre farm in Crystal Lake, Illinois, in which the wife gave the husband one half interest.
The husband had all the major credit cards with unlimited credit plus charge accounts at many luxury stores where he regularly shopped. He maintained extensive clothing in their Florida and Illinois homes. Several times each year he paid substantial entry fees so he could participate in celebrity golf tournaments such as the Bob Hope and Andy Williams Classics.
The parties were members of seven luxury country clubs in Chicago and Miami for which the wife paid substantial initial membership sums and all the subsequent dues and bills incurred. They traveled extensively throughout the country and the world, and because of the wife's substantial *374 interest in race horses, routinely traveled to the Kentucky Derby and other races in New York, California and Illinois. They were attended by servants in their homes in Florida and Illinois. They entertained extensively at home and various clubs at which they were members. They had full access to the seventy-five foot family yacht on which they maintained a full crew, contributing $3,000 a month to the operation of the vessel. In addition, they had two late model Cadillacs, a Buick stationwagon and a speedboat.
The husband estimated that his living expenses during the marriage were over $5,000 a month. The wife estimated that the family's total monthly living expenses were approximately $15,000 including income taxes. The wife could not have provided the foregoing fantasy-land existence for the husband on anything less than enormous resources. At the time of the final hearing, she had a net worth of $4,250,000 including cash and marketable securities of $3,325,000 plus an annual net income of $200,000.
During the marriage the husband dabbled, but never seriously participated in various business ventures provided by his wife's family. He was a figurehead president of the Antioch Insurance Agency for four years. Following this venture, he was a treasurer and director in the Antioch Savings and Loan Association from which he was eventually removed for failure to attend meetings.
The parties ceased living together as husband and wife on May 6, 1975. At that time the wife forbade the husband to return to their home in Florida or to live in any other of her properties. She removed his clothes therefrom and the husband has remained unemployed living with friends at a drastically reduced living style ever since. He unsuccessfully sought employment on several occasions in Florida and Chicago. There is evidence that the husband presently suffers from a mental disorder requiring professional treatment, but that at 37 he is in excellent physical health.
At the time of the dissolution, the husband held the following assets, all provided to him by the wife during the marriage: an undivided one half interest in an eighty acre farm in Crystal Lake, Illinois, his interest valued at $160,000; a 1974 and 1975 Cadillac valued together at a total of $12,000; and a twenty-five foot power boat valued at $6,000. In addition, he leaves the marriage with his original one half interest in one hundred shares of Sears Roebuck stock valued at $6,000 and an 80 percent ownership interest in a Ft. Lauderdale lounge known as the "Filling Station." The husband owes the wife $60,000 for the purchase of this lounge which at the time of the final hearing was up for sale for $110,000. He, therefore, has approximately $200,000 in assets, almost all of which are non-liquid and non-income producing.
The wife filed a petition for dissolution of marriage seeking the dissolution of the marriage, custody of the parties' two minor children and an adjudication of her rights as to the $60,000 loan which she had made to the husband. The husband answered denying that the marriage was irretrievably broken as well as the allegations concerning the loan. He requested alimony, attorneys fees and suit monies. The wife replied denying the husband's need for alimony, suit monies, and attorneys fees, which reply was amended to assert adultery as a defense to his claim for alimony, suit monies and attorneys fees.
The case came on for final hearing in which the trial court heard extensive testimony and reviewed certain physical evidence. Thereafter, the court entered a final judgment dissolving the marriage, awarding custody of the children to the wife with rights of visitation for the husband and requiring the husband to pay the wife $60,000 from his share of the proceeds obtained from the sale of the "Filling Station" lounge in Ft. Lauderdale. These parts of the final judgment are not contested by either party on this appeal.
The court further ordered the wife to pay the husband $30,000 lump sum alimony and $5,000 a month rehabilitative alimony for *375 eighteen months. Both parties contest these awards.
At a subsequent hearing, the court took testimony and heard arguments as to reasonable attorneys fees. Thereafter the court awarded $30,000 in attorneys fees and $1,191.36 in suit monies for the husband. The wife contests this award.

I
The major question presented for review is whether it is an abuse of discretion in a dissolution of marriage action for a trial court to award the husband $30,000 in lump sum alimony and $5,000 a month rehabilitative alimony for 18 months when: (1) the wife has a net worth of $4,250,000; (2) the parties shared an extremely high standard of living at first supported by the wife based on contributions to her from her father and thereafter based entirely on her own wealth during a nine year marriage; (3) the husband is 37 years old, unemployed with limited employment skills, in good physical, but impaired mental health, and in possession of approximately $200,000 assets most of which were received during the marriage from the wife.
Both parties contend that the trial judge abused his discretion. The wife argues that the husband is not entitled to any alimony; the husband argues that the amount of lump sum alimony is inadequate and that permanent, rather than rehabilitative alimony should have been awarded. We reject all these contentions and hold that the alimony awards herein were well within the discretion of the trial judge to make under the circumstances of this case.

A
Alimony has been traditionally considered an allowance which a husband is required to make in order to maintain his wife in the event of separation or divorce and is based on the common law obligation of a husband to support his wife. Floyd v. Floyd, 91 Fla. 910, 108 So. 896 (1926). In determining the amount of such alimony, the courts have established two criteria: (1) the husband's ability to pay, and (2) the needs of the wife, taking into consideration the standard of living shared by the parties to the marriage. Sisson v. Sisson, 336 So.2d 1129 (Fla. 1976); Firestone v. Firestone, 263 So.2d 223 (Fla. 1972); Sharpe v. Sharpe, 267 So.2d 665 (Fla. 3d DCA 1972); Carmel v. Carmel, 282 So.2d 6 (Fla. 3d DCA 1973).
Quite properly, these are criteria of the broadest nature, not susceptible to a precise formula automatically translatable into dollars and cents. We are dealing with a tragically human problem which touches peoples' lives during a period of immense personal crisis. One cannot dispense substantial justice in such explosive cases as if the answer lies in a computer or a rigid rule book. Mathematical exactness is neither possible nor desirable. The trial court of necessity has a wide discretion to apply the established criteria in fashioning a fair and equitable alimony award in the infinite variety of cases which come before it. Absent a showing that the trial court exercised this discretion arbitrarily or unfairly, alimony awards made pursuant to such criteria must be sustained on appeal. Shaw v. Shaw, 334 So.2d 13 (Fla. 1976); Bosem v. Bosem, 279 So.2d 863 (Fla. 1973); Lee v. Lee, 309 So.2d 26 (Fla. 2d DCA 1975).
The so-called "no fault" divorce law enacted by the Florida Legislature in 1971, represents a significant, but not totally radical departure from the historic conception of alimony. Section 61.08, Florida Statutes (1975) provides as follows:
"(1) In a proceeding for dissolution of marriage, the court may grant alimony to either party, which alimony may be rehabilitative or permanent in nature. In any award of alimony, the court may order periodic payments or payments in lump sum or both. The court may consider the adultery of a spouse and the circumstances thereof in determining whether alimony shall be awarded to such spouse and the amount of alimony, if any, to be awarded to such spouse.
(2) In determining a proper award of alimony, the court may consider any factor necessary to do equity and justice between the parties."
*376 Under this statute, it is provided for the first time that a wife may be required to support her husband through alimony payments. This is in keeping with the current social trend toward establishing a more equitable relationship between the sexes. The First District Court of Appeal pointed out in Beard v. Beard, 262 So.2d 269 (Fla. 1st DCA 1972):
"In this era of women's liberation movements and enlightened thinking, we have almost universally come to appreciate the fallacy of treating the feminine members of our society on anything but a basis of complete equality with the opposite sex. Any contrary view would be completely anachronistic. In this day and time, women are well educated and trained in the arts, sciences, and professions as are their male counterparts. The law properly protects them in their right to independently acquire, encumber, accumulate, and alienate property at will. They now occupy a position of equal partners in the family relationship resulting from marriage, and more often than not contribute a full measure to the economic well-being of the family unit." Id. at 271-72.
The First District Court of Appeal further elaborated on this theme in Thigpen v. Thigpen, 277 So.2d 583 (Fla. 1st DCA 1973) as follows:
"The new concept of marriage relation implicit in the so-called `no fault' divorce law enacted by the legislature in 1971 places both parties to the marriage on a basis of complete equality as partners sharing equal rights and obligations in the marriage relationship and sharing equal burdens in the event of dissolution." Id. at 585.
Although this historic change in alimony law is far-reaching and we have not yet chartered its full effects, we can at least begin by stating that a husband's entitlement to alimony must stand on the same criteria as that of a wife. Lefler v. Lefler, 264 So.2d 112 (Fla. 4th DCA 1972). To be entitled to alimony, the husband must show a financial ability by the wife to pay for such an award coupled with a demonstrated need of the husband for support, taking into consideration the standard of living shared by the parties to the marriage.
Although in most marriages, the husband remains the sole provider of the family, with the wife making the home and raising the children, if any, an increasing number of marriages do not fit this mold. In some marriages, both parties work and jointly support the family, although the degree of support by either party may vary. In others, the wife is the sole support of the family unit with the husband fulfilling some non-economic role. It is in these non-traditional type marriages where the question of alimony for the husband may arise.
In the instant case, we are faced with such a non-traditional type of marriage. Although neither party did any serious work to financially support the family unit, the wife, rather than the husband, was the sole provider in this marriage. The husband resigned his employment at the request of the wife to live a life of luxury with his wife and family. Such fabulous wealth on the part of a woman who supports a marriage in which the husband is of modest means is not unknown in our society, but it certainly presents a case of unusual dimensions which we think the trial judge handled most reasonably upon the marriage's dissolution under the traditional criteria for awarding alimony.

B
As to the first criterion for awarding alimony, it is undisputed that the wife easily has the financial ability to pay for the alimony award in this case. She has a financial worth in excess of $4,000,000 and regularly maintains a checking account considerably greater than the total $120,000 alimony award for the husband. The award is therefore immune from attack as being beyond the financial means of the wife. See: Sisson v. Sisson, 336 So.2d 1129 (Fla. 1976).
As to the second criterion for awarding alimony, the lump sum and rehabilitative alimony awards herein were commensurate with the need of the husband for temporary, *377 although not permanent support, taking into consideration the standard of living shared by the parties to the marriage. The husband's limited employment opportunities, his impaired mental condition, and the very high standard of living to which the wife accustomed the husband to live during the marriage, are all critical factors in sustaining the trial court's exercise of discretion in fashioning the alimony award in this case.
The husband was a toy salesman for six years earning a modest salary which job he gave up at the request of the wife to devote full time to his life with the wife and family after a year and a half of marriage. Save for this limited service mainly as a figurehead in the businesses of his wife's family, he has been out of the employment market for the last seven and a half years of the marriage. At the time of the final hearing, he was unemployed, living with friends at a drastically reduced life style, having unsuccessfully attempted on a number of occasions to obtain employment, since the wife barred him from the marital homes. This impairment in a spouse's otherwise modest employment capacities caused in part by the supporting spouse's insistence that such work be terminated in favor of the family is a significant factor in sustaining an alimony award. Brook v. Brook, 289 So.2d 766 (Fla. 3d DCA 1974).
Added to this, is the husband's impaired mental condition. According to the uncontradicted testimony of an industrial psychologist, Dr. Marquit, the husband is suffering from a mental disorder which will require at least a year of intensive psychotherapy at considerable expense. He further testified that at present the husband is ill-suited for the employment market. We are in no position to second guess the trial judge's acceptance of this testimony based on his personal evaluation of Dr. Marquit as well as that of the husband. Certainly it is not beyond the realm of reasonable inference for the trial judge to have concluded that the husband's nine years of leisure class idleness followed by an abrupt end to his male cinderella existence when the wife literally threw him out of her home, at least partially brought on his current mental problems for which some period of rehabilitation is necessary. Such mental impairment, although temporary rather than permanent in nature, is a significant factor in sustaining an alimony award. Baker v. Baker, 229 So.2d 276 (Fla. 3d DCA 1974).
The husband's financial needs must also be measured in part by taking into consideration the extremely high standard of living to which the wife accustomed the husband through nine years of marriage. Firestone v. Firestone, 263 So.2d 223 (Fla. 1972); Hausman v. Hausman, 330 So.2d 833 (Fla. 3d DCA 1976); Dash v. Dash, 284 So.2d 407 (Fla. 3d DCA 1973). The wife accustomed the husband to a life style which costs over $5,000 a month to maintain during a marriage which can hardly be described as a "marry in June and sue the following September" situation. Firestone v. Firestone, supra. In view of this fact, we cannot say that the limited eighteen month rehabilitative alimony plus lump sum alimony fashioned by the trial judge herein was an abuse of discretion. It was reasonably commensurate with the parties' high life style without at the same time creating an unreasonable charge on the wife for the rest of her life.
The wife argues that she accustomed the husband to such a high life style based on money she received from her father. It is true that the wife supported the marriage at first through contributions from the wife's father, but from 1972-1975 she supported the family unit entirely from her own separate estate. In our judgment, it is irrelevant how the wife lawfully acquired the money on which she supported the husband and family. The fact is she supported the family unit, not the husband. And despite the wife's protests, a high standard of living remains a significant factor in setting an alimony award, which result is unchanged by the fact that the paying spouse acquired his or her wealth by gift or inheritance. See: Firestone v. Firestone, 263 So.2d 223 (Fla. 1972).
*378 Rehabilitative alimony has been awarded to supplement means already available in an amount reasonably required during the post-marriage period to maintain a spouse until he or she in the exercise of reasonable efforts and endeavors is in a position of self support. Cann v. Cann, 334 So.2d 325 (Fla. 1st DCA 1976). It necessarily presupposes the potential for self support which is presently impaired. Reback v. Reback, 296 So.2d 541 (Fla. 3d DCA 1974). Lump sum alimony has been awarded as a payment of a definite sum or property in the nature of a final property settlement which serves a reasonable purpose such as rehabilitation or where the marriage's duration or the parties' financial position would make such an award advantageous to both parties. Cann v. Cann, 334 So.2d 325 (Fla. 1st DCA 1976); Calligarich v. Calligarich, 256 So.2d 60 (Fla. 4th DCA 1971). The alimony awards herein fit these traditional patterns and purposes for alimony.
The wife argues that the husband's $200,000 in assets acquired mainly by gift from the wife during the marriage, disqualifies the husband from receiving any alimony. We disagree. Although this is a significant factor in upholding the trial court's refusal to make the alimony permanent, we cannot say that this compels the result urged by the wife, particularly in view of the husband's demonstrated need for temporary, rehabilitative support. Except for the Sears stock, the husband's assets are non-income producing. And it has been held that a spouse is not required to deplete capital assets in order to maintain a prior standard of living. Gordon v. Gordon, 204 So.2d 734 (Fla. 3d DCA 1967). Moreover, alimony awards have been upheld where the spouse seeking alimony possessed assets comparable to that of the husband in this case. Harrison v. Harrison, 314 So.2d 812 (Fla. 3d DCA 1975).
The wife throughout these proceedings has attacked the husband's life style as parasitic and has warned that he should not be able to parlay such an existence into a $120,000 alimony award. The same criticism could be made of a good many wives who upon dissolution of a tragically flawed marriage have received alimony awards. We pass no judgment on the morality or social value of the marriage herein. Many Americans might very well regard the conduct of either party to this marriage with some cynicism. The work ethic is, after all, deeply ingrained in our mores. But we must take the marriage as we find it without passing judgment on the life style of either party. In a free society, there is room enough for many kinds of marriages, including this one. If and when such a marriage dissolves, it must be accorded equal treatment according to the standards for determining alimony set for all marriage dissolutions.
Moreover, the limited nature of the alimony awards herein should allay any fears that it will encourage any type of parasitic conduct. The husband has hardly been given a meal ticket for life; he has been given a temporary and limited assist to rehabilitate himself to a position of eventual self-support based on a demonstrated need. In this, we can find no abuse of discretion.

C
Turning now to the husband's cross appeal, we are not persuaded that the husband's demonstrated needs are so great that the trial court abused its discretion in refusing to make the alimony award permanent rather than rehabilitative and in refusing to award a greater lump sum alimony. As the wife accurately points out, the husband is a relatively young, well-educated man of 37, has excellent physical health although temporarily impaired mental health, has $200,000 in assets of his own, has some employment skills if only limited ones, and lives alone without custody of the parties' two children. We can see no reason why he could not properly rehabilitate himself within eighteen months with the alimony awarded herein. See: Cann v. Cann, 334 So.2d 325 (Fla. 1st DCA 1976). In the event that substantial rehabilitation does not occur by the end of eighteen months despite the husband's reasonable and diligent *379 efforts, the husband can petition the court for modification of the alimony award. Section 61.14 Florida Statutes (1975); Lee v. Lee, 309 So.2d 26 (Fla. 2d DCA 1975).

II
The second question presented for review is whether it is an abuse of discretion in a dissolution of marriage action for a trial judge to set a $30,000 attorneys fee to be paid by the wife for the husband's attorneys where: (1) the wife has a net worth of $4,250,000; (2) the husband has a net worth of $200,000; (3) the husband's attorneys secure lump sum and rehabilitative alimony for the husband worth $120,000; (4) the husband's attorneys are eminent counsel who spent one hundred working hours plus twenty more hours of associate and law clerk time preparing for a unique, but not protracted or unduly complex litigation; and (5) the expert testimony puts a reasonable attorneys fee at $30,000.
The wife contends that she should not be required to pay the fee and that in any event, the fee was excessive. We reject these contentions and hold that the award of attorneys fees was well within the discretion of the trial judge to set under the circumstances of this case.
Much the same considerations which govern our decision on the alimony issue control the issue on attorneys fees. There is a demonstrated need for financial assistance for the husband to hire competent counsel which is not precluded by his possession of non-liquid, non-income producing assets. Bencomo v. Bencomo, 195 So.2d 874 (Fla. 3d DCA 1967); Wilkerson v. Wilkerson, 179 So.2d 592 (Fla. 2d DCA 1965); Arrington v. Arrington, 150 So.2d 473 (Fla. 3d DCA 1963); Turney v. Turney, 149 So.2d 83 (Fla. 3d DCA 1963). The wife unquestionably has the financial ability to pay for the fee.
The attorneys for the husband spent one hundred working hours preparing the case herein plus twenty more hours of associate and law clerk time. The case was a unique, but not protracted or unduly complex litigation. Expert testimony placed a reasonable attorneys fees at $30,000. The attorneys have been successful in securing an alimony award for the husband which is a singular accomplishment in the amount of $120,000. The husband's attorneys are also eminent counsel in the community.
The wife complains that the fee is excessive in view of the number of hours spent preparing the case. The law is well-settled, however, that attorneys fees should be awarded based in large measure on the quality of services rendered and not necessarily on the quantity of service. Hall v. Hall, 200 So.2d 544 (Fla. 3d DCA 1967). The elements usually considered in determining the amount of attorneys fees are: services rendered, responsibility incurred, the nature of the services, the skill required, the circumstances under which it was rendered, the ability of the litigant to respond, the value of the services to the client, and the beneficial results, if any, of the services. Provus v. Provus, 44 So.2d 656 (Fla. 1950). Measured by these standards, it is clear that the trial judge was well within his discretion in awarding attorneys fees for the husband in the amount of $30,000. Donner v. Donner, 281 So.2d 399 (Fla. 3d DCA 1973).
We have considered the other contentions made by the parties and find them unpersuasive. The judgment below in all respects is therefore affirmed.
Affirmed.