382 So.2d 710 (1979)
Edward CORNELIUS, Appellant,
v.
Carolyn M. CORNELIUS, Appellee.
No. LL-13.
District Court of Appeal of Florida, First District.
September 18, 1979.
Rehearing Denied November 6, 1979.
*711 Jackson G. Beatty, Tallahassee, for appellant.
Keith J. Kinderman, Tallahassee, for appellee.
ERVIN, Judge.
We return to the problem of when it is proper to award lump sum alimony  a problem which has continuously vexed the courts of this state.
The parties' marriage terminated after 16 years of a generally unhappy existence. At the time of dissolution the husband's gross salary from his solely-owned business was $18,000 per year, whereas the business's income was $8,974, leaving him a total taxable income of $26,850.75. The husband's financial statement reflected total assets in the amount of $138,830.00 and total liabilities of $21,450.00, leaving a net worth of $117,380.00. Included within the $138,830.00 figure was $89,080.00, which represented the book value of stock in his solely owned business. Itemized separately from *712 the other liabilities enumerated were "contingent liabilities" of $187,000.00 which included his liability as an individual endorser on a note for a $100,000.00 inventory loan and on a real estate mortgage encumbering his business. The wife's financial affidavit showed her total assets were $17,350.00, with $5,000.00 in estimated liabilities. She had no income.
Before the parties' marriage, the wife was employed as a hairdresser. She discontinued her work shortly after their child was born and has worked only briefly since 1962. After the parties separated, the wife entered Florida State University, and since her enrollment for the past several years has received excellent grades. The wife, 36 years of age at the time of dissolution, is unemployed, and her psychiatrist, whom she had consulted for several years, testified that she suffered from mental depression and, because of her condition, she had no present ability to earn a living; moreover, if she could obtain employment, it was his opinion she was then unable to function sufficiently to hold a job. He recommended, in view of her present mental condition, that she undergo group therapy for two or three years.
The trial judge awarded custody of the parties' only child to the husband, granted the wife rehabilitative alimony in the amount of $25,200.00 over a period of five years, payable in installments of $500.00 per month for the first three years, and thereafter $300.00 per month. He also awarded her as lump sum alimony the husband's one-half interest in the marital home and $7,000.00 cash. The parties' real property, jointly owned during marriage, remained the property of both as tenants in common. All personal property and appliances, with the exception of the household furniture, were awarded the wife. Finally, the husband was ordered to pay the wife's attorney fees in the amount of $3,000.00. We reverse the awards of lump sum alimony, household furnishings and appliances since the wife has not demonstrated her needs for them, but sustain the remainder of the judgment as being within an appropriate exercise of the trial court's discretion.
Since, as so often occurs in cases of this sort where lump sum alimony awards are entered, the recipients defend the awards by relying upon Brown v. Brown, 300 So.2d 719 (Fla. 1st DCA 1974), cert. dism. 307 So.2d 186 (Fla.), we consider it time to re-visit Brown in an effort to determine whether its rule has continuing efficacy. We begin with the well worn premise that any award of alimony, whether it be named permanent, rehabilitative or lump sum, must be supported by a showing that the spouse requesting it has a need for it, in a manner commensurate with the style which the parties enjoyed during marriage, as well as a showing that the other spouse has the ability to provide for those needs. Sisson v. Sisson, 336 So.2d 1129 (Fla. 1976); Calligarich v. Calligarich, 256 So.2d 60 (Fla. 4th DCA 1971); Cann v. Cann, 334 So.2d 325 (Fla. 1st DCA 1976).
We think it necessary, because of the apparent confusion over what criteria are to be considered when awarding alimony, to review briefly the origin and history of alimony prior to the 1971 Marital Dissolution Act. First, it should be noted that alimony is a creature of statute. While there was no right at common law to a divorce from the bonds of marriage, the ecclesiastical courts could annul a marriage if it was found initially defective. 1 W. Blackstone, Commentaries Ch. 15, 439 (Sharswood ed. 1859). If, during the marriage, a husband committed adultery or deserted his wife, the wife could seek a judicial order equivalent to a separation decree, and the court had discretion to order that the husband provide for the wife's support as a continuation of his marital obligation to supply her needs. Id. at 439-41. Historically, and in its literal sense, alimony meant nourishment or sustenance. Floyd v. Floyd, 91 Fla. 910, 108 So. 896, 898 (1926). It was the allowance which a husband could be compelled to pay the wife for her maintenance when living apart from him, and had for its sole object the provisions of food, clothing, habitation and other necessaries *713 for the support of the wife during her lifetime. Id.
The right to alimony connected with divorce was permitted by statute in what was then the Florida territory by Section 7, Act of October 31, 1828 (McClellan's Digest, Laws of Florida (1881)), and provided: "[T]he court shall and may, ... take such order,... touching the maintenance and alimony of the wife, or any allowance to be made to her, ..., as from the circumstances of the parties and nature of the case may be fit, equitable and just." In interpreting the above statute, the Florida Supreme Court observed: "Permanent alimony is not a sum of money or specific proportion of the husband's estate given absolutely to the wife. It is a continuous allotment of funds payable at regular intervals for her support from year-to-year." Phelan v. Phelan, 12 Fla. 449, 456 (1868) (e.s.). The concept that permanent alimony was to be paid only periodically persisted until 1947, when Chapter 23894, Laws of Florida (1947), amended Section 61.08 by authorizing permanent alimony to be paid either periodically or in a lump sum. Finally, in 1963, the statute was amended by adding the words: "[P]eriodic payments or payment in lump sum or both."
There are important differences in the consequences which attach to lump sum and permanent alimony awards. An award of permanent alimony, unlike lump sum, terminates upon the death or remarriage of its recipient,[1]Cann v. Cann, supra, while lump sum alimony creates a vested right which survives death and is not modifiable or terminable upon the divorced wife's remarriage. Id.
Undoubtedly the leading case on lump sum alimony is Yandell v. Yandell, 39 So.2d 554 (Fla. 1949). Yandell observed that lump sum alimony was not among the favored ways to provide one spouse with the support of the other. Rather, it is justified where it is clearly established that the husband has assets sufficient to pay the gross award. However, it should not be awarded if it results in the impairment of the obligor's financial status. The husband must be able to pay "over and above the requirements ... of his business or employment, or the preservation of his professional activities." Id. at 556. The Yandell rule was generally followed in later cases. E.g., Goode v. Goode, 76 So.2d 794 (Fla. 1954); Olsen v. Olsen, 158 So.2d 775 (Fla.3d DCA 1963); Aufseher v. Aufseher, 217 So.2d 868 (Fla. 3d DCA 1969).
Prior to the 1971 Marital Dissolution Act, the law on alimony remained free from uncertainty as to what factors should be taken into consideration when determining whether or not to permit an award. The equation was unchanged: alimony = need + the ability to provide for that need.
As originally passed, the 1971 Act adopted section 308 of the Uniform Marriage and Divorce Act which permitted the trial court to enter a maintenance order, unrelated to the fault of either party, once a finding was made that the spouse seeking maintenance lacked sufficient property to provide for his needs, or was unable to support himself or herself through appropriate employment, or was the custodian of a child whose circumstances made it appropriate that the custodian not be required to seek employment outside the home. See H.B. 736, Section 8 (Reg. Session 1971). The governor, however, vetoed this measure.[2] The final compromise provision of the Act, Section 61.08(1), modified the 1969 statute (1) by permitting any spouse to apply for alimony, whereas only the wife could do so before, (2) by allowing an award of rehabilitative alimony, and (3) by permitting the court to consider the adultery of the spouse when deciding whether alimony should be awarded, as well as the amount of alimony to be *714 awarded. Subsection (2) was added authorizing the court to "consider any factor necessary to do equity and justice between the parties."
The net result of the Act was, unfortunately, an anomaly. While the fault of neither spouse was to be considered when determining whether the bonds of marriage should be dissolved, fault, specifically adultery by statute, was retained when deciding whether alimony should be awarded.[3] And it was judicially extended to other areas of fault not designated by statute. See, e.g., Oliver v. Oliver, 285 So.2d 638 (Fla. 4th DCA 1973); Baker v. Baker, 299 So.2d 138 (Fla. 3d DCA 1974), cert. den. 307 So.2d 186 (Fla.). The admission of evidence relating to fault was, however, narrowly circumscribed by the Supreme Court's recent opinion in Williamson v. Williamson, 367 So.2d 1016 (Fla. 1979), where the court held that a trial judge could permit evidence of misconduct by the spouse who caused economic hardship to the other, as an equitable circumstance under Section 61.08(2), only after it is demonstrated that both parties will suffer economic hardship following division of their resources.
Even following the adoption of the Act, the courts until 1974 continued to follow the traditional equation by which alimony awards were measured. This equation was disregarded in 1974 when Brown v. Brown, supra, was decided. In Brown, the court compared the net worth statements of both parties and, finding in them a gross disparity, observed that the wife had contributed as a homemaker to both the husband's career and financial status. It decided that she had been shortchanged since the trial court had failed to take into consideration the wife's contribution to the marital home. It concluded by directing the trial judge to make a lump sum alimony award, without any determination of the wife's need or whether the husband's business might be jeopardized. The sole justification for the award was to compensate the wife for her contribution to the marriage as a homemaker while the husband "pursued the accumulation of material goods." Id. at 726. Brown found support for its decision in Section 61.08(2), permitting the trial court to "consider any other factor necessary to do equity and justice between the parties."[4]
Whatever the Brown court labeled the award, it simply was not alimony, since the award was based on factors other than one spouse's need and the other's ability to supply those needs.[5] Nor could it be labeled a special equity in the husband's property. A special equity, which is not to be confused with alimony and is not alimony, Cann v. Cann, supra, is allowable where one spouse contributes materially either in funds or personal services to the other's business or acquisition of property. Welsh v. Welsh, 160 Fla. 380, 35 So.2d 6 (Fla. 1948); Heath v. Heath, 103 Fla. 1071, 138 So. 796 (1932); Eakin v. Eakin, 99 So.2d 854 (Fla. 1958). It is only warranted upon a special showing that the spouse seeking such equity contributed money or services to the other's property accumulations above and beyond the performance of the marital duties. Id.
The confusion resulting from the Brown rule is evident in a number of recent decisions. For example, McAllister v. McAllister, 345 So.2d 352 (Fla. 4th DCA 1977), while considering the traditional criteria upon which an award of alimony should be *715 predicated, stated that a trial court should consider also the extent to which the wife has been required to do actual housework and perform the chores of raising children, as well as the extent of her contribution to her husband's successful career. Other cases which specifically followed Brown include Goldman v. Goldman, 333 So.2d 120 (Fla. 1st DCA 1976); Johnston v. Johnston, 349 So.2d 682 (Fla. 2d DCA 1977); Ruse v. Ruse, 351 So.2d 81 (Fla. 1st DCA 1977).
Any lingering doubts as to what factors should or should not be considered by a court when lump sum alimony is requested were laid to rest by the Florida Supreme Court's recent opinions in Cummings v. Cummings, 330 So.2d 134 (Fla. 1976) and Meridith v. Meridith, 366 So.2d 425 (Fla. 1978), where lump sum alimony awards were reversed because there had been no demonstration of any positive showing of necessity on the wife's part, even though the husband may have possessed the pecuniary ability to pay. In Meridith, the court specifically adopted the dissenting opinion of Judge Downey as the decision of the court. In his dissent, it was stated, "[T]he original Florida case discussing lump sum alimony, Yandell v. Yandell, 39 So.2d 554 (Fla. 1949), has not been changed." 352 So.2d 72, 73 (Fla. 4th DCA 1977). Recent decisions, both from this district, e.g., Robinson v. Robinson, 366 So.2d 1210 (Fla. 1st DCA 1979), and others, Fraser v. Fraser, 368 So.2d 97 (Fla. 3d DCA 1979); Judge v. Judge, 370 So.2d 833 (Fla. 2d DCA 1979); Saldana v. Saldana, 372 So.2d 528 (Fla. 4th DCA 1979), have followed the equation and disregarded Brown's marital contribution rule.
Since the Yandell standards remain intact it is necessary that we recede from language in Brown which suggests a lump sum award may be made without a showing either of the need of the spouse or the ability of the other spouse to supply that need. We also recede from Brown to the extent it implies that lump sum alimony may be employed as a tool for equalizing the estates of the respective spouses following dissolution. To permit an award of alimony, as did Brown, as compensation for a spouse's marital contributions could produce the paradoxical result of a dutiful, attentive spouse receiving alimony even in the absence of any demonstration of need, while a less assiduous spouse, whose needs are manifest, is penalized for her lack of industry. Such a result does not comport with the conventional concept of alimony and any rule causing such a result should not be maintained.
Brown represents an eloquent recognition of the homemaker's contributions to the marital home. It must be rejected, however, as an unacceptable deviation from that which we understand to be the traditional equation by which all alimony is measured. Until the legislature sets aside that equation, we have no choice other than to follow it.
In this decision, we do not foreclose the court from determining, upon proper pleading and proof, whether the wife may establish a special equity in the proceeds derived from the sale of the spouses' former home located in Miami to the extent those proceeds were later applied to the husband's business in Tallahassee. Nor do we foreclose the court's right to consider whether other equitable claims exist to justify the entry of any award to her other than lump sum alimony, such as the exclusive use and possession of the home.
While we reverse the lump sum alimony awards entered, we certify the following question to the Florida Supreme Court as one of great public interest:
May a trial court, pursuant to Section 61.08(2), Florida Statutes (1977), base an award of lump sum alimony on factors (such as those discussed in Brown v. Brown, 300 So.2d 719 (Fla. 1st DCA 1974)) not relating to one spouse's needs and the ability of the other spouse to provide for those needs?
AFFIRMED in part, REVERSED in part and remanded for further proceedings consistent with this opinion.
MILLS, C.J., concurs.
MASON, ERNEST E., Associate Judge, specially concurs and dissents.
*716 MASON, ERNEST E., Associate Judge, specially concurring and dissenting.
I concur in the result reached by the majority opinion but dissent from that portion which recedes from the language of Brown v. Brown, 300 So.2d 719 (Fla. 1st DCA 1974). Such result is fully supported by the record herein without the necessity of revisiting the language of Brown and receding therefrom as the majority opinion has done.
NOTES
[1] It does not terminate upon the death of its obligor and may, upon an appropriate showing, be made a charge against his estate. See First National Bank in St. Petersburg v. Ford, 283 So.2d 342 (Fla. 1973); Davis v. Davis, 358 So.2d 126 (Fla. 1st DCA 1978).
[2] See Jackson, The No-Fault Concept: Grounds and Defenses, Florida Family Law Section 21.1 (2d Ed. 1972).
[3] For an excellent examination of our ambiguously named "No-Fault Divorce Act", see note, Alimony in Florida. No-Fault Stops at the Courthouse Door. 28 U. of Fla.L.Rev. 521 (1976).
[4] The above subsection did little more than re-phrase the language in the statute which remained in existence from 1828 until 1971, which had formerly provided that a trial court may allow alimony "as from the circumstances of the parties and nature of the case may be fit, equitable and just."
[5] Perhaps it could be considered a distribution of the assets following the dissolution of an implied partnership, an approach favored by some scholars as a means of recognizing the homemaker's personal contributions to the marriage. See, for example, The Implied Partnership: Equitable Alternative to Contemporary Methods of Post-marital Property Distribution, 26 U. of Fla.L.Rev. 221 (1973).