J. W. FLOYD, *Appellant*, v. ADDIE HUNTON FLOYD, *Appellee*.

Division B.

Opinion Filed May 13, 1926.

912

*McGill & McGill,* Attorneys for Appellant.

*David Kaufman,* Attorney for Appellee.

TERRELL, J.—In the Spring of 1923, Addie Hunton of Brooklyn, New York, Secretary of the National Association for the Advancement of Colored People, came to Jacksonville, Florida, in the interest of that organization. While in Jacksonville, J. W. Floyd, the appellant, heard her speak, became fascinated with her at "first sight" and sought an introduction. She continued her journey to South Florida, from whence she returned to Jacksonville in about ten days and was introduced to Floyd who precipitated instanter the subject of matrimony as the major topic of conversation. Floyd proposed, Addie Hunton accepted, and after three days spent in Jacksonville continued her journey to Georgia, Alabama and Louisiana in the interest of the organization for which she was secretary. Floyd communicated with her at every stop along her journey by letter, telephone and telegraph. She reached Savannah, Georgia, about the middle of April, where she was met by Floyd who renewed his proposal and urged an early marriage. From Savannah, Addie Hunton proceeded to Fort Valley, Georgia, where she again met and was married to Floyd, April 30th, 1923, after having communicated with him by long distance telephone.

This appears to have been the second matrimonial venture of both the contracting parties. The groom was in his early sixties and the bride was in her middle forties. The marriage rights being concluded the groom returned at once to Jacksonville, Florida, and the bride, now Hunton Floyd, continued her work as Secretary for the National

Association for the Advancement of the Colored People, reaching the home office in New York about the first of June. Floyd went to New York in July, 1923, where he lived and cohabited with Addie Hunton Floyd from the fifth to the thirty-first of that month. He then returned to Jacksonville, and so far as the record shows, never saw his wife again, though they corresponded frequently until May, 1924, and Floyd at various times sent her money by check to pay certain doctor bills and living expenses.

On August 13th, 1924, Floyd filed his bill praying for divorce on the ground of desertion. On September 3rd, 1924, Addie Hunton Floyd filed her petition for temporary alimony, suit money and solicitor's fees as authorized by Section 3194, Revised General Statutes of Florida, 1920. This petition is sworn to and, among other things, alleges that ''she has a good, true and complete defense to the charge of desertion alleged in the bill of complaint, but that her health is bad, and she has no property or money wherewith to retain a solicitor to represent her, nor money wherewith to pay court costs, nor money wherewith to maintain herself while this cause is being litigated.''

A special master was appointed October 6th, 1924, to take testimony as to the facilities of the parties under the petition for temporary alimony and counsel fees. On September 16th, 1924, commission and interrogatories were issued to Samuel W. DeVine of 261 Broadway, New York, to take the deposition of Addie Hunton Floyd. The special master filed his report October 27th, 1924, and the cause was considered on final hearing the same date of the master's report, and the chancellor entered his decree allowing two hundred dollars temporary solicitor's fee, and twenty-five dollars per week temporary alimony. Floyd appeals from this decree.

Was the decree allowing temporary alimony and solici-

tor's fees providently entered may be stated as the sole question presented here for our consideration.

The marriage of the parties hereto is admitted. The grounds on which temporary alimony and suit money are based are recited in that part of the petition heretofore quoted in this opinion. The deposition of appellee alleges that she is without funds, income or property except household furnishings worth four or five hundred dollars, while appellant has income and property worth many thousands of dollars. The record nowhere discloses a satisfactory reason for the appellee's failure or refusal to live with the appellant in his home in Jacksonville. She was never in his home, and the only time they have lived and cohabited together as man and wife was during the month of July, 1923, when he visited her at her apartment in Brooklyn, New York.

In answer to the petition for temporary alimony and suit money the appellant flatly contradicts every material allegation of said petition, and in addition alleges that appellee is strong and healthy; that she is in the employ of a certain society in New York at a salary of two hundred dollars per month, and has an additional income of from twenty to thirty dollars per night lecturing; that during the year 1924 she visited and lectured in many cities throughout the United States in the interest of the society employing her; that long prior to, at the time of and since his marriage to appellee he has lived in his home at Jacksonville, Florida, which is comfortable, well furnished and ample for his wife, appellee, to live in; that notwithstanding the duty of his wife to come and live with him in his home she has never done so, and continues to remain away from his home through no fault of his whatever; that he did on the 31st of July, 1923, and at various other times since give

her ample funds to pay her way to Jacksonville, Florida, if she had desired to come.

Alimony is based on the common law obligation of the husband to support the wife. It literally signifies nourishment or sustenance and is the allowance which a husband may be compelled to pay his wife for her maintenance when living apart from him, or has been divorced. Like the alimentum of the civil law, from which the word was evidently derived, it has for its sole object the provision of food, clothing, habitation and other necessaries for the support of the wife. Every provision in a decree of divorce made solely for this purpose is to be regarded as alimony whether expressly designed as such or not. 2 R. C. L. 864.

Alimony is classified as temporary, sometimes called "*alimony pendente lite*," or "*alimony ad interim*," and permanent alimony. We are concerned only with temporary alimony in this case, which is an allowance made to the wife for her maintenance during the pendency of the action as provided by Section 3194, Revised General Statutes of Florida, 1920. This section also carries provision for suit money, but in either event where the wife is the defendant, as is the case here, the allowance of temporary alimony or suit money is under the terms of the statute conditioned on the answer or petition seeming "well founded."

It is well settled in this State that two facts must concur and be made to appear before a court is justified in making an allowance to the wife in a divorce suit for temporary alimony and suit money: (1) The necessity of the wife from want of means or sufficient means to maintain herself during the litigation, and with which to employ counsel; (2) It must also appear that the husband has means to supply this necessity. It is also well settled that the granting or withholding of temporary alimony and suit money

is not a matter of right, but it is within the discretion of the court to whom the application therefor is made; but this discretion is not an arbitrary one; it is a judicial discretion to be exercised in accordance with established rules of law wisely adapted to the facts apparent in each particular case and is subject to review by the appellate court. Sanchez v. Sanchez, 21 Fla. 346; Haddon v. Haddon, 36 Fla. 413, 18 South. Rep. 779; Arendall v. Arendall, 61 Fla. 496, 54 South. Rep. 957; Underwood v. Underwood, 12 Fla. 434; Phelan v. Phelan, 12 Fla. 449; 1 R. C. L. 892.

The voluntary absenting of the wife from the husband's household, without cause, will bar her right to temporary alimony. Where, therefore, a charge to that effect is asserted by the husband in defense of the wife's application for temporary alimony, the temporary alimony sought will be denied unless a sufficient showing is made by the wife in refutation of such charge. It is unnecessary, however, to inquire into the merits of the principal controversy further than to establish a *prima facie* showing. Rhame v. Rhame, 1 McCord's Ch. (S. C.) 197, 16 Am. Dec. 597; Methvin v. Methvin, 15 Ga. 97, 60 Am. Dec. 664, Note 673; Latham v. Latham, 30 Gratt. (Va.) 307; Begbie v. Begbie, 7 N. J. Eq. 98; Martin v. Martin, 8 N. J. Eq. 563; Pearson v. Pearson, 125 Ga. 132, 54 S. E. Rep. 194; George v. George, 130 Ga. 608, 61 S. E. Rep. 401; 1 R. C. L. 895; 19 C. J. 510, *et seq.* If it is made to appear that the wife's income from her separate estate is sufficent to provide for her maintenance her application for temporary alimony will be denied. This rule arises from and is an exception to the doctrine of the common law to the effect that the wife has no separate estate because by the act of marriage her property vested in the husband. Chaires v. Chaires, 10 Fla. 308; Haddon v. Haddon, 36 Fla. 413, 18 South. Rep. 779; Meeker v. Meeker, 74 Fla. 442, 76 South. Rep. 197; 1 R. C.

L. 895; 2 Schouler on Marriage, Divorce, Separation and Domestic Relations (6th ed.) p. 1950.

In some States temporary alimony is allowed as a matter of right, but under our law, it is made dependent on the petition therefor being *"well founded."* In the case at bar the appellee seeks temporary alimony on the ground that she has a complete defense to the suit for divorse; that her health is poor, and that she has no money, income or property wherewith to conduct her defense. Under the law as enunciated in this opinion the answer of appellant puts in issue every material allegation of the petition for temporary alimony, and if true, raises a complete bar to it.

The record shows that appellee has from the date of her marriage to appellant lived in a foreign State apart from him, the reason therefor not being satisfactorily explained. Appellant alleges that such residence has been without his fault, that he has often furnished her money to come to Florida, and that she has ample means and income to conduct her defense. If these allegeations, or either of them, are true, the petition for temporary alimony and solicitor's fees was not *"well founded."*

The evidence taken in this case is directed solely to the faculties of the parties. It discloses that appellant is able to respond in temporary alimony and solicitor's fees, if liable therefor. The record is not regular, but when the absence of appellee from appellant's home and the contention of appellant that appellee has ample means to prosecute her defense were put in issue, it was the duty of the chancellor to determine these issues; and if one or both of them were found in favor of appellant, the petition for temporary alimony should have been denied. In the case at bar this was not done; so that part of the decree granting temporary alimony is reversed. That part of the decree granting two hundred dollars suit money is affirmed.

918

Mutter v. Mutter, 123 Ky. 754, 97 S. W. Rep. 393, 124 Am. St. Rep. 381; 1 R. C. L. 910.

Affirmed in part; reversed in part.

WHITFIELD, P. J., AND BUFORD, J., concur;

BROWN, C. J., AND ELLIS AND STRUM, J. J., concur in the opinion.