50 So.2d 169 (1951)
JACOBS
v.
JACOBS.
Supreme Court of Florida, en Banc.
January 5, 1951.
Rehearing Denied February 12, 1951.
*170 Sam Bucklew, Tampa, for appellant.
Fowler, White, Gillen, Yancey & Humkey, Tampa, and Robert H. Wrubel and Edward Garfield, New York City, for appellee.
CHAPMAN, Justice.
It appears by the record in this case that the parties hereto married on April 18, 1912, and two children were born to the union, to-wit, a daughter, Louise Jacobs, during the year 1915, and a son, John Jacobs, III, in 1920. The daughter Louise married a Mr. Phelps and died during the year 1941, leaving a daughter then one year of age, to-wit, Dorothea Louise Phelps. This child, since the death of her mother in 1941, has resided with its grandmother, to-wit, Dorothea D.G. Jacobs. The son, John Jacobs, III, is over twenty-one years of age. The parties to this suit, as reflected by the record, cohabited together continuously as husband and wife from 1912 until 1939, when unhappy differences arose and the parties at that time discontinued cohabitation. On June 6, 1950, John Jacobs filed a suit for divorce against his wife, Dorothea D.G. Jacobs, in the Circuit Court of Hillsborough County, Florida. The wife filed an answer to the bill of complaint of her husband and a counterclaim against her husband, praying for temporary and permanent alimony commensurate with the station in life of the parties; likewise suit money, traveling expenses, an allowance for counsel fees and a further allowance for counsel fees reasonable in amount to be awarded on final hearing.
The record discloses that after the marriage in 1912, the husband began the accumulation of an estate by making investments in his own name and in the names of others and in the names of different corporations. The husband invested in stocks, bonds, lands, etc., and possessed large property holdings in the several States of the Union and in the Dominion of Canada. In the year 1931 his then estate was augmented in value by an inheritance in a sum in excess of $3,500,000.00 from an aunt. The wife alleged that the plaintiff husband, in 1939, was the owner of an estate worth not less than $5,000,000.00 and the exact value being unknown but the stocks and bonds and other assets of the estate increased immensely in value and the value thereof far exceeds $5,000,000.00, and his annual income, rents and profits amount in the course of a year's time to several hundred thousand dollars.
The answer of the wife recites and alleges that in order for her to maintain herself in her present standard of living it is necessary for her to have additional tax-free income of more than $25,000.00 per year and if based upon the present income tax laws and the present gross income from trust, of which she is now a beneficiary provided by her husband her total income, before the payment of income taxes, must total not less than $100,000.00 per annum, which would necessitate the husband *171 plaintiff making provisions for her additional income, after income tax deductions, of not less than $65,000.00 per year. It is admitted that the husband, continuously since the separation in 1939 has made financial provision for the wife's support and maintenance, but in her answer and counterclaim she requests the court to decree additional allowances over and above the amounts voluntarily supplied by the husband since separation and prior to the filing of his suit for divorce.
The pleadings reflect that for a period of time prior to the separation in 1939 they lived in a home situated near the City of Philadelphia valued at approximately $500,000. The property consisted of 38 acres of land with a home of about forty rooms. They hired twelve servants to maintain it. The parties owned and maintained a palatial Summer residence consisting of approximately twenty rooms at Watch Hill, Rhode Island. They operated at least six automobiles for their personal and pleasure driving. They owned show horses and exhibited them at various places in the Country. Thousands of dollars were expended annually in providing entertainment. They traveled extensively in other Countries and enjoyed social contacts within the top social strata of society in many Countries of the world. Large sums of money were annually expended for clothing, jewelry and furs. Since the separation in 1939 the wife has not been able to maintain these social contacts according to her station in life because of inadequate allowance of support funds on the part of her husband.
The husband alleges that he has made ample and substantial allowances for his wife's support and maintenance since separation in 1939 to the following extent:
(1) Creation of an irrevocable trust of $1,000,000 for the plaintiff, from which she receives the entire income and she has so received the entire income for the last fifteen years, and will continue to receive said income for the duration of her life;
(2) The gift by the plaintiff to the defendant of over $60,000.00 in gilt-edge securities in 1939 and prior thereto;
(3) Gift of the home at Bryn Maur, Pa., valued at $500,000.00 exclusive of furnishings;
(4) Gift to the defendant of Summer home at Watch Hill, R.I., valued at $150,000.00;
(5) A Rivet Company in Ohio producing income of $12,000.00 annually, which income defendant received;
(6) Jewelry, diamonds and precious stones, valued at, and insured for, $100,000.00; and
(7) Contributions by the plaintiff to the defendant of an average of $5,600.00 per year for the past eight years for the support and maintenance of a grandchild now living with the defendant.
The answer and counterclaim of the wife fixes the value of her husband's estate at approximately $15,000,000.00. She alleges that she has no property or sufficient income with which to support or maintain herself or with which to defend the suit for divorce brought against her by her husband. She prays for an annual allowance of $100,000.00 for permanent alimony. The suit brought against her by her husband will necessitate extensive travel from her home in the City of New York to Tampa, Florida, and suggests traveling expenses in the sum of not less than $15,000.00 should be decreed to her. Likewise, counsel fees, both temporary and permanent, should be decreed to her for the defense of her husband's suit in a sum of not less than $100,000.00. The husband's pleadings recite that he owns a substantial estate valued at between two and three million dollars. He admits that he is now financially able and now willing to pay all installments of alimony that the Court may decree to the wife and all reasonable and just costs and attorney's fee necessary for her to defend against his suit for divorce.
On motion of counsel for the wife, after the pleadings were at issue, the Court below, on August 22nd, 1950, entered an order requiring the husband to produce certain instrument and documents as follows:
(1) Full and complete copies of the income tax returns made by the plaintiff to the United States Government for the years *172 1947, 1948 and 1949, together with full and complete copies of all data and accounts submitted to the Government with the income tax returns for those years.
(2) A full and complete statement listing any property, real or personal, owned by the plaintiff and which property does not or did not produce income required to be listed or income tax returns for the years 1947, 1948 and 1949; and
(3) A full and complete statement, under oath, of plaintiff's holdings in corporations, whether or not listed in the New York or any other stock exchange, showing the names of the corporations, the outstanding capital stock thereof, how much stock the plaintiff owned therein, and, as a part of said statement under oath, the last financial statement of any corporation of which the plaintiff owned at the time of his filing suit for divorce, 51% of the stock.
(4) The plaintiff, John Jacobs, also will be required to answer the questions referred to in the motion of pages 35, 36, 39, 40, 41, 44, 45, and 46, 48, 53, 56 and 57, 71, 77, 78 and 79. The plaintiff, John Jacobs, will not be required to answer the questions set forth in the motion and referred to as being on pages 32, 33, 34 and 37 of the transcript. The witness, John Jacobs, who is the plaintiff, is required to answer all questions propounded regarding his estate or his income for the years 1947, 1948 and 1949.
The appellant Jacobs, on petition for interlocutory certiorari filed in this Court, contends that the order of the lower Court was erroneous in requiring him to produce copies of his income tax returns for the years 1947, 1948 and 1949 as made to the Federal Government touching his income, coupled with the names of his corporations listed on the New York Stock Exchange in which corporations he owned 51% of the stock, and a financial statement of each of said corporations as owned by him prior to the date of filing suit for divorce. Likewise, he should not be required to produce a statement of the bank accounts owned by him nor the contents of his safety deposit boxes nor a list of holdings of securities owned by him between 1939 and the time of filing suit for divorce. The petitioner contends: (1) that the discovery sought is not germane to the issues made by the pleadings of the parties; (2) the petitioner admits on the record that the value of his property is approximately two and one-half million dollars; (3) he is now financially able and willing to pay to the appellee such amount of alimony as the Court may decree should be paid; (4) the financial ability and willingness to pay counsel fees and all costs of the litigation is admitted on the record; (5) the discovery sought is not material, essential, pertinent or relevant to the issues and cannot aid the Court in adjudicating the issues; (6) the information sought may be embarrassing to the appellant in his business activities and cannot be helpful to the appellee in connection with this litigation.
Pertinent here is Florida Equity Rule 49, 31 F.S.A., effective January 1, 1950, viz.:
"On the motion of any party, after reasonable notice, the court may order any other party or parties to produce books, records and papers containing or believed to contain evidence pertinent to the cause of action or defense of the movant which are in the possession or control of the party or parties named in the motion and order, either for inspection before or use at the trial, at such time or times and under such reasonable terms and conditions as may be prescribed by the court in its order on such motion." (Emphasis supplied.)
Also Subsection (d) of Equity Rule 47, which adopted Florida Common Law Rules 20-30, and 27 thereof, 30 F.S.A., relates to discovery and is viz.:
"Upon motion of any party showing good cause therefor and upon notice to all other parties, subject to the provisions of Rule 30(b), the court in which an action is pending may (1) order any party to produce and permit the inspection and copying or photographing, by or on behalf of the moving party, of any designated documents, papers, * * *".
This Court, in the case of Hollywood Beach Hotel & Golf Club, Inc. v. Gilliland, 140 Fla. 24, 191 So. 30, 32, had occasion *173 to construe Equity Rule 49, supra, then Section 49 of Chapter 14658, Acts of 1931, F.S.A. § 63.49, and we in part said:
"We construe this rule to entitle any party to a cause the privilege of examining the `books, records, and papers' of the opposite party containing or believed to contain evidence pertinent to the cause of the movant and if found to be so, it may be used at the trial. We think, however, that the movant should specify in his motion with particularity [as best he can] the facts he intends to prove together with the books, records, and papers from which the evidence he is in need of may be secured and that only such books, records, and papers as reveal the facts specified to be proven should be produced. The sole purpose of the rule is to procure evidence pertinent to the issues. It is in no sense designed to afford a litigant an avenue to pry into his adversary's business or go on a fishing expedition to uncover business methods, confidential relations, or other facts pertaining to the business. The latter part of the rule clothes the judge before whom the application is made with ample power to determine the sufficiency of the motion and to say what books, records and papers should be brought in and the terms under which they should be produced." See Wofford v. Wofford, Fla., 47 So.2d 306, 307.
Alimony is based on the common law obligation of the husband to support his wife. It signifies nourishment or sustenance and is the allowance which a husband may be compelled to pay his wife for her maintenance when living apart from her or has been divorced. Floyd v. Floyd, 91 Fla. 910, 108 So. 896. In the early case of Haddon v. Haddon, 36 Fla. 413, 18 So. 779, we held that two things must concur and be made to appear before a court is justfied in making allowance to the wife in a divorce proceeding for alimony pendente lite and permanent alimony, counsel fees and suit money: (1) a necessity therefor must appear on the part of the wife from want of means or of sufficient means to maintain herself during the litigation and with which to employ counsel; (2) it must affirmatively appear that the husband has the pecuniary ability to supply that necessity. The foregoing rule has been reaffirmed on many occasions. See Arendall v. Arendall, 61 Fla. 496, 54 So. 957; Floyd v. Floyd, supra; Shepard v. Shepard, 128 Fla. 72, 174 So. 330.
The appellee wife does not contend that her husband failed or omitted to properly support and maintain her since the separation in 1939 and prior to his filing suit against her for divorce on June 6, 1950. In her answer to the bill of complaint and in her counterclaim she asserts that the Court should decree her permanent alimony at a sum of not less than $100,000.00 annually, which sum, after payment of income tax, would amount approximately to $65,000.00. Likewise, she should be paid $15,000.00 for traveling expenses and the further sum of $100,000.00 as counsel fees for defending the husband's divorce suit. The husband, in turn, is willing, after adjudication, to pay reasonable sums for each of these items and admits that he is possessed of considerable wealth and is financially able to pay the same. He fixes the value of his estate at between two and three million dollars.
In light of the issues made by the pleadings, it is our conclusion that the production of the books, records, receipts, bank statements, etc., referred to in the order dated August 22, 1950, is not material, relevant or pertinent to the issues and for said reason the order was improper and should be quashed.
The petition for a writ of interlocutory certiorari is granted and the order complained of is quashed.
ADAMS, C.J., and TERRELL and HOBSON, JJ., concur.
THOMAS, SEBRING and ROBERTS, JJ., dissent.