468 So.2d 995 (1985)
Lolan BEERS, Appellant,
v.
The PUBLIC HEALTH TRUST OF DADE COUNTY, Appellee.
No. 84-780.
District Court of Appeal of Florida, Third District.
March 12, 1985.
On Rehearing May 21, 1985.
*996 Jonas & Jonas and Daniel Jonas, Miami Beach, for appellant.
Hayt, Hayt & Landau and Sean L. Fisher and Alan M. Fisher, Miami, and Ned Kimmelman, Miami, for appellee.
Before NESBITT, BASKIN and FERGUSON, JJ.
NESBITT, Judge.
Lolan Beers, defendant below, appeals a summary final judgment entered in favor of the plaintiff, the Public Health Trust of Dade County, for claimed medical expenses incurred by Beers' deceased wife. We reverse.
Beers and the decedent were married on December 9, 1976. In September 1978, Beers' wife, with no forewarning to her husband, left their marital home and moved in with her cousin. Although Beers attempted to locate his wife on numerous occasions, he did not become aware of her whereabouts until she entered Jackson Memorial Hospital on November 3, 1978. Beers' wife remained in the hospital through November 12, 1978, when she died. During her stay in the hospital, Beers' wife received medical services and supplies with an alleged value of $4,785.04.
The plaintiff, the owner and operator of the hospital, brought suit against Beers for the medical expenses incurred by his wife during her final illness. The cause of action was based upon the common law duty of a husband to support his wife and the derivative liability of a husband for his wife's necessaries. Beers responded by filing an answer which raised the defense of abandonment. After a hearing on cross-motions for summary judgment, the trial court entered a summary final judgment for the plaintiff, implicitly finding that Beers' abandonment defense was without merit as a matter of law. This appeal followed.
It is undisputed that as a general rule a husband is liable to a third party who supplies necessaries, including medical expenses, to his wife.[1]Phillips v. Sanchez, 35 Fla. 187, 17 So. 363 (1895); Parkway General Hospital, Inc. v. Stern, 400 So.2d 166 (Fla. 3d DCA 1981); Manatee Convalescent Center, Inc. v. McDonald, 392 So.2d 1356 (Fla. 2d DCA 1980); Holiday Hospital Association v. Schwarz, 166 So.2d 493 (Fla. 2d DCA 1964). This liability arises where the husband has a duty to furnish the necessaries to his wife and he fails in this duty. Schwarz, 166 So.2d at 495. The common law duty of a husband to supply necessaries to his wife arises from the marital relationship, Stern; see Fieldhouse v. Public Health Trust of Dade County, 374 So.2d 476 (Fla. 1979), cert. denied, 444 U.S. 1062, 100 S.Ct. 1003, 62 L.Ed.2d 745 (1980), and is solely for the benefit of the wife, not for the benefit of the third-party creditor furnishing the necessaries. Schwarz, 166 So.2d at 495.
This general rule of liability of the husband, however, is subject to exceptions where the husband and wife are not living together. As will be further detailed below, when a wife has left her husband, through no fault of his, the husband's common law duty of support is terminated. Where this duty is terminated, the husband's *997 liability for the wife's necessaries is likewise terminated. The well-settled law in this area has been stated as follows:
In the absence of an agreement by a husband living apart from his wife to pay for goods or services furnished her, his liability for necessaries furnished her is dependent on his duty of support. Such liability cannot exist where the circumstances of the separation are such that the duty of support cannot exist, and it terminates when the circumstances become such, after a separation, that the duty of support terminates. Whether the duty and liability exist in any particular case of separation depends on the circumstances at the time the necessaries are furnished. One dealing with a wife who lives apart from her husband trusts to her representations at his peril, since the liability of the husband arises, not from her representations or the credit given to them, but from evidence of facts on which the law imposes the liability.
... .
Generally, the husband is not liable for necessaries furnished his wife when he fails to support her where such necessaries are furnished her at a time when they are living apart through her fault. Thus, he incurs no liability when his wife leaves him without his assent and without justification... .
... .
The rule that the husband is under no liability for necessaries furnished his wife while they are living apart through her fault applies generally, irrespective of the knowledge of the facts and circumstances of her fault by the one furnishing her with the necessaries. The husband is not required to give notice to the public to save himself from liability. [footnotes omitted]
41 Am.Jur.2d Husband and Wife §§ 355, 357 (1968). Accord Schwarz. See also Annot., 60 A.L.R.2d 7 (1958). Thus, where the spouses are living apart through the wife's fault, the husband is generally not liable for medical services rendered the wife. See Schwarz, 166 So.2d 496-97. The plaintiff has cited no cases, and we have found none that have applied a different rule.[2] In addition, we find support for the rule that a husband is not liable for an abandoning spouse's necessaries in a corollary area of law that has been established in Florida.
As previously indicated, a husband's liability for necessaries supplied to his wife arises out of his common law duty to support his wife during the marriage. Therefore, that area of law dealing with a husband's duty to support his wife and a wife's right to temporary alimony while the couple is living apart is particularly relevant here. See generally 41 Am.Jur.2d Husband and Wife §§ 329-86 (1968). The pivotal decision in this area was rendered by the supreme court in Floyd v. Floyd, 91 Fla. 910, 108 So. 896 (1926).
In Floyd, the court held that before a wife could be awarded temporary alimony, it must be established both that the wife has a need for such support and that the husband has the ability to supply the support. The court then recognized that the decision of whether to grant or withhold temporary alimony was within the discretion *998 of the trial court, but that the discretion was not an arbitrary one and it must be exercised in accordance with established rules of law. 108 So. at 898. One of those rules of law specifically addressed in Floyd concerned the defense of abandonment.
The wife, in Floyd, petitioned the court for temporary alimony and suit money pending the outcome of the divorce action brought by her husband. The husband objected and raised the defense of abandonment and the fact that the wife did not need such an award. Despite these defenses the chancellor awarded the wife temporary alimony. The supreme court reversed:
The record shows that [the wife] has, from the date of her marriage to [her husband], lived in a foreign state apart from him; the reason therefor not being satisfactorily explained. [The husband] alleges that such residence has been without his fault; that he has often furnished her money to come to Florida; that she has ample means and income to conduct her defense. If these allegations, or either of them, are true, the petition for temporary alimony and solicitor's fees was not "well founded."

... .
[I]t was the duty of the chancellor to determine these issues, and, if one or both of them were found in favor of [the husband], the petition for temporary alimony should have been denied.
108 So. at 899. The court specifically held that abandonment by a wife of her husband, without cause, is a complete bar to any right she may have to temporary alimony. 108 So. at 898-99. Since the court recognized that temporary alimony arises out of the common law duty of support, the court implicitly held that a wife's abandonment of her husband dissolves the husband's common law obligation to support his wife.[3] 108 So. at 898-99. See also Ross v. Ross, 431 So.2d 742 (Fla. 4th DCA 1983); Daniel v. Daniel, 243 So.2d 247, 248 (Fla. 1st DCA 1971) (on petition for rehearing); Bloom v. Bloom, 131 So.2d 27, 29 (Fla. 3d DCA 1961).
It necessarily follows that if it is established in the present case that Beers' wife abandoned him in September 1978, Beers' common law duty to support his wife was extinguished at that time. Since a husband's liability for his wife's necessaries, like a wife's right to temporary alimony, arises out of this common law duty, the extinguishment of the duty likewise extinguishes the liability for the necessaries. See Schwarz. It was therefore error for the trial court to grant a summary judgment for the plaintiff when Beers had raised the issue of abandonment.
Although Beers has characterized abandonment as an affirmative defense, it is not an affirmative defense in the classic sense. It is a defense only in the sense that Beers must raise the issue. See Annot., 60 A.L.R.2d 7, § 47 (1958). Once the abandonment issue is raised, the overwhelming majority of jurisdictions which have considered the issue hold that the burden shifts to the plaintiff-creditor to establish that the wife was justified or not at fault in leaving her husband. In other words, one who furnishes a wife with necessaries takes the risk of establishing a case *999 against the husband, and the burden is on him to prove the existence of the elements of the husband's liability. To meet this burden when the husband and wife live apart, the plaintiff must establish that the separation is by mutual consent or that it was occasioned by the fault or misconduct of the husband. See 41 Am.Jur.2d Husband and Wife § 363 (1968) and cases cited; Annot., 60 A.L.R.2d 7, § 47 (1958) and cases cited. Cf. Floyd, 108 So. at 898 ("Where ... a charge [of abandonment] is asserted by the husband in defense of the wife's application for temporary alimony, the temporary alimony sought will be denied, unless a sufficient showing is made by the wife in refutation of such charge.").
Our decision today does not affect, and is not affected by, Florida's so-called "no fault divorce law." See Ch. 61, Fla. Stat. (1983). A husband's liability for his wife's necessaries arises from the common law duty of a husband to support his wife. The common law duty has not been replaced or altered by the Florida legislature. Cf. Fieldhouse (finding section 708.10, Florida Statutes (1977), constitutional, and holding that the statute does not affect the common law duty of a husband to support his wife). Therefore, the common law remains intact in this area.[4]
In addition to abandonment, Beers raised as a defense that the plaintiff was unaware of Beers' wife's marital status and, thus could not have relied upon him to pay the bills. The record reflects that Beers and his wife were living apart when Beers' wife entered the hospital; it further reflects that Beers' wife entered the hospital under her maiden name. It appears on the record, therefore, that Beers may be able to assert the common law defense that services extended to a married woman based solely on her credit do not obligate her husband. See Runkel v. Southeast Palm Beach Hospital District, 453 So.2d 939 (Fla. 4th DCA 1984). Upon remand, Beers should be permitted to amend his pleading accordingly if he so desires.
Finding that summary judgment was improperly entered for the plaintiff, we reverse and remand this cause for further proceedings.
BASKIN, Judge (dissenting).
I dissent from the majority opinion; in my view, antiquated concepts of fault do not apply to terminate a spouse's support obligations.
The majority opinion evokes a moment of history I had expected to find only in dusty legal tomes. Citing a 1926 case, a 1958 annotation, a 1968 American Jurisprudence Second article, the majority reiterates the obsolete principle that "where the spouses are living apart through the wife's fault, the husband is generally not liable for medical services rendered the wife." At 997. (emphasis supplied).
Fault concepts were severely curtailed, if not deleted, from Florida's dissolution of marriage laws in 1971 when the legislature enacted Florida's no-fault statute, Chapter 61. Today's opinion returns to an evaluation of the relative fault of the parties in deciding a creditor's right to payment for hospital services rendered to a wife who "voluntarily" abandoned the marital residence. Thus, under the majority opinion, *1000 before accepting a patient for treatment, a hospital or other potential creditor will be forced to determine not only the individual's marital status but also the reasons behind any separation before advancing credit. It will then be incumbent upon the creditor to decide which party caused the separation and whether the parties will reconcile before the creditor can rely on an indebted spouse's marital status in seeking satisfaction for a debt. I find this result both archaic and impractical.
I agree with the majority's statement that the obligation of support arose from the common-law duty of a husband to provide for his wife. There is no question that either spouse is responsible for the other's necessaries, including medical bills. Parkway General Hospital v. Stern, 400 So.2d 166 (Fla. 3d DCA 1981). The obligation does not exist solely in the common law, however. The Florida legislature has enacted statutes enforcing the obligation of support.
According to section 61.09, Florida Statutes (1983):
Alimony and child support unconnected with dissolution.  If a person having the ability to contribute to the maintenance of his or her spouse and support of his or her minor children fails to do so, the spouse who is not receiving support or who has custody of the children may petition the court for alimony and for support for minor children without petitioning for dissolution of marriage, and the court shall enter such order as it deems just and proper.
The marital status signifies to creditors that a spouse remains financially responsible. Our present no-fault dissolution laws present no justification for the termination of the marital obligation merely upon a showing that the indebted spouse "abandoned" the marital home. To terminate the support responsibility under current legal principles, a spouse should be required to institute dissolution or separate maintenance proceedings, implemented without establishing fault, and may not merely "cast off his or her responsibility to third persons for obligations incurred by the other spouse for items which are of the character of the family expenses." St. Luke's Medical Center v. Rosengartner, 231 N.W.2d 601 (Iowa 1975). Section 61.10, Florida Statutes, permits a spouse to present the issue to a court. It provides:
Adjudication of obligation to support spouse or minor children unconnected with dissolution; child custody and visitation.  Except when relief is afforded by some other pending civil action or proceeding, a spouse residing in this state apart from his spouse and minor children, whether or not such separation is through his fault, may obtain an adjudication of his obligation to maintain his spouse and minor children, if any. The court shall adjudicate his financial obligations to such spouse or children, or both, and fix the custody and visitation rights of the parties and enforce them. Such an action does not preclude either party from maintaining any other proceeding under this chapter for other or additional relief at any time. (emphasis supplied).
No such action was undertaken in this case.
In Williamson v. Williamson, 367 So.2d 1016 (Fla. 1979), the Florida Supreme Court construed sections 61.08(1), (2), Florida Statutes (1975). The court disapproved a trial court's considerations of relative fault of the parties in determining alimony awards; the court found that to permit such a standard would be contrary to the spirit of the system of no-fault dissolution. Similarly, the application of relative fault of the parties in dealings with third-party creditors violates the spirit and intent of the no-fault dissolution laws. There is no justification for a return to antiquated standards predicated exclusively on fault.
For these reasons, I would affirm.

ON MOTION FOR REHEARING
BASKIN, Judge.
The position set forth in the dissent to the opinion released March 12, 1985, has been approved by a majority of the court. *1001 We hold that the Public Health Trust is entitled to recover from Lolan Beers medical expenses incurred by his wife immediately prior to her death at Jackson Memorial Hospital. We reject, as a matter of law, Lolan Beers' defense that because Mrs. Beers allegedly abandoned the marriage by moving in with her cousin approximately two months prior to her death, he was relieved of his spousal obligation to pay her medical bills.
Florida law renders a spouse financially responsible for the other spouse's necessary bills. Parkway General Hospital, Inc. v. Stern, 400 So.2d 166 (Fla. 3d DCA 1981); Manatee Convalescent Center, Inc. v. McDonald, 392 So.2d 1356 (Fla. 2d DCA 1980); see Variety Children's Hospital v. Vigliotti, 385 So.2d 1052 (Fla. 3d DCA 1980); Fieldhouse v. Public Health Trust of Dade County, 374 So.2d 476 (Fla. 1979), cert. denied, 444 U.S. 1062, 100 S.Ct. 1003, 62 L.Ed.2d 745 (1980); § 61.09, Fla. Stat. (1983).
The marital status itself signifies to creditors that a spouse remains financially responsible to third party creditors. A spouse may not merely "cast off his or her responsibility to third persons for obligations incurred by the other spouse for items which are of the character of family expenses." St. Luke's Medical Center v. Rosengartner, 231 N.W.2d 601, 602 (Iowa 1975).
Nothing in the record supports a finding of abandonment by Mrs. Beers. Even if an abandonment had occurred, however, the husband failed to take the measures provided by law for relief from his legal obligations. The Florida legislature has provided legal avenues for an abandoned spouse to obtain a judicial determination altering his or her financial obligations. For example, section 61.10, Florida Statutes (1983) provides:
Adjudication of obligation to support spouse or minor children unconnected with dissolution; child custody and visitation.  Except when relief is afforded by some other pending civil action or proceeding, a spouse residing in this state apart from his spouse and minor children, whether or not such separation is through his fault, may obtain an adjudication of his obligation to maintain his spouse and minor children, if any. The court shall adjudicate his financial obligations to such spouse or children, or both, and fix the custody and visitation rights of the parties and enforce them. Such an action does not preclude either party from maintaining any other proceeding under this chapter for other or additional relief at any time. (emphasis supplied)
Because no such action was undertaken in this case, Mr. Beers' marital obligations remained in effect and the Public Health Trust is entitled to recover.
Affirmed.
FERGUSON, J., concurs.
NESBITT, Judge (dissenting):
I must respectfully dissent. The majority holds that, as a matter of law, abandonment is not a defense to the general liability imposed on one spouse for the necessaries of the other spouse.[1] In my view, the majority has, in effect, impermissibly overruled a prior Florida supreme court decision, see Floyd v. Floyd, 91 Fla. 910, 108 So. 896 (1926), which has not been abandoned by the supreme court, in an area that has not been affected by legislation to date. See Gilliam v. Stewart, 291 So.2d 593 (Fla. 1974); Hoffman v. Jones, 280 So.2d 431 (Fla. 1973).
In Floyd, the supreme court recognized that "[a]limony is based on the common-law obligation of the husband to support the wife." 108 So. at 898. The court specifically held that abandonment by a wife *1002 of her husband, without cause, is a complete bar to any right she may have to temporary alimony. Therefore, the court's implicit holding was that a wife's abandonment of her husband dissolves the husband's common law obligation to support his wife. 108 So. at 898-99. See also Ross v. Ross, 431 So.2d 742 (Fla. 4th DCA 1983); Daniel v. Daniel, 243 So.2d 247, 248 (Fla. 1st DCA 1971) (on petition for rehearing); Bloom v. Bloom, 131 So.2d 27 (Fla. 3d DCA 1961).
Since a husband's liability for his wife's necessaries, like a wife's right to temporary alimony, arises out of the common law duty of a husband to support his wife, the extinguishment of the duty results in the extinguishment of the liability for the necessaries as well. See Holiday Hospital Association v. Schwarz, 166 So.2d 493 (Fla. 2d DCA 1964). It necessarily follows that if it is established in the present case that Beers' wife abandoned him in September 1978, Beers' common law duty to support his wife, and thus, his liability for necessaries furnished his wife, was extinguished at that time. See Floyd; Schwarz.
This analysis is not affected by Florida's so-called "no fault divorce law." See ch. 61, Fla. Stat. (1983). A husband's liability for his wife's necessaries arises from the common law duty of a husband to support his wife. This common law duty has not been replaced or altered by legislation in Florida. Accordingly, the common law remains intact in this area. See Manatee Convalescent Center, Inc. v. McDonald, 392 So.2d 1356, 1357 (Fla. 2d DCA 1980) ("[t]he common law ... is the fountainhead of the rule that a husband is responsible for the necessaries of his spouse").
The appellee's reliance on section 61.09, Florida Statutes (1983), in its motion for rehearing is misplaced. This section provides:
If a person having the ability to contribute to the maintenance of his or her spouse ... fails to do so, the spouse who is not receiving support ... may petition the court for alimony ... without petitioning for dissolution of marriage, and the court shall enter such order as it deems just and proper. [emphasis added]
Thus, in doing equity, the court is given discretion to decide whether an award should be made; "but this discretion is not an arbitrary one; it is a judicial discretion, to be exercised in accordance with established rules of law wisely adapted to the facts apparent in each particular case... ." Floyd, 108 So. at 898. Section 61.09 does not create any new duty on the part of one spouse to support the other. The statute merely allows one spouse to petition the court to acquire support from the other spouse when the other spouse may have a duty to provide such support under the common law. Cf. Fieldhouse v. Public Health Trust, 374 So.2d 476, 478 (Fla. 1979) (section 708.10, Florida Statutes (1977) "does not create a duty on the part of the husband to support his wife"), cert. denied, 444 U.S. 1062, 100 S.Ct. 1003, 62 L.Ed.2d 745 (1980).
Likewise, the majority's reliance on section 61.10, Florida Statutes (1983), is misplaced. This section (quoted in full in the majority opinion) is the converse of section 61.09. The statute merely allows a spouse to petition a court to "obtain an adjudication of his obligation to maintain his spouse and minor children, if any." [emphasis added] By its very terms, the statute does not create any new duty on the part of one spouse to support the other.[2]Cf. Fieldhouse. In fact, it indicates, contrary to the *1003 majority's holding, that there are instances in which a spouse is not liable for the support of the other spouse.
Accordingly, the common law duty of support is the only duty of support that exists between spouses prior to dissolution of the marriage. See Manatee Convalescent Center. The supreme court has held that when one spouse abandons the other, this common law duty to the abandoning spouse is extinguished. Floyd. Since the liability of one spouse for the necessaries of the other arises out of this common law duty, the extinguishment of the duty due to abandonment likewise extinguishes the liability for necessaries. See Schwarz.
Admittedly, the Floyd case was decided during an era when the concept of "fault" permeated divorce law. Even in today's "no fault" climate, however, the underpinnings of the Floyd decision and the defense of abandonment retain some validity in this area. It should be emphasized that the present case has nothing to do with the dissolution of a marriage and, thus, Florida's "no fault divorce law," ch. 61, Fla. Stat. (1983), is not directly involved. This case deals strictly with the common law marital duty of a husband to support his wife and derivative liability of the husband for his wife's necessaries. The distinction between the rights and duties arising under each of these situations should not be ignored or confused. Cf. Preston v. Preston, 116 Fla. 246, 157 So. 197, 198-99 (1934) (on rehearing).
Certainly the creditor herein stands in no better position than Beers' wife would be in if she had survived and was petitioning for support. The court in Schwarz, 166 So.2d at 495, held:
It can be authoritatively stated, we believe, that a husband is liable for the necessaries of his wife where he has a duty to furnish them and if he fails in this duty, the law makes his wife an agent to pledge his credit for her necessities. This rule was engrafted in the law for the benefit of the wife, however, and not for the benefit of the creditor furnishing goods and services to her.
In essence, then, the creditor's suit here involved is in the nature of an equitable suit for specific performance of the husband's common law marital duty to render his wife support and supply her necessaries. See Preston, 157 So. at 199. The courts of this state have always recognized the inequity of requiring an abandoned spouse to support the errant wayward spouse. See, e.g., Tigertail Quarries, Inc. v. Ward, 154 Fla. 122, 16 So.2d 812, 813-14 (1944) ("Although it may be the duty of a husband to provide a home and living expenses for the wife, it is the duty of the wife to live in the home he provides for her if she desires to enjoy the benefit. She cannot leave that home at her pleasure, abandon the husband without justifiable cause and then require him to maintain her."); Floyd (abandonment by a wife of her husband, without cause, is a complete bar to any right she may have to temporary alimony); Thompson v. Thompson, 86 Fla. 515, 98 So. 589, 590 (1923) ("It is the duty of the husband to provide a home and living expenses for his family, and, if the wife desires to enjoy that benefit, it is her duty to live in the home he provides for her. She cannot leave that home at pleasure, abandon it for a year, and then equitably or under the statute require him to maintain her... ."); Ross v. Ross, 431 So.2d 742 (Fla. 4th DCA 1983) (in view of the "specific findings of gross misconduct on the part of the wife, including total abandonment of the marriage, plus an ability to earn," it was error to award the wife temporary support); Smith v. Smith, 378 So.2d 11, 15 (Fla. 3d DCA 1979) ("it might well be thought improper to permit an errant spouse to destroy a marriage and then to claim benefits equal to those which would have been provided had it remained intact"); Schwarz, 166 So.2d at 496 ("a husband is not liable for the necessities of the wife where the separation is occasioned by the fault of the wife"). See also Preston; Pitts v. Pitts, 412 So.2d 404, 405 n. 1 (Fla. 3d DCA 1982); Stone v. Stone, 151 So.2d 301 (Fla. 3d DCA 1963); Bloom.
*1004 Perhaps the majority's concern is with the term "abandonment" itself and not the concept behind the defense. In my view, the establishment of abandonment would necessarily encompass a consideration of all the equitable circumstances existing in a particular case. The surrounding circumstances would have to be examined to determine whether a party was "justified" in leaving his or her spouse. If there was justification for leaving, there is no abandonment. Of course, what circumstances would support a finding of justification cannot be enumerated ahead of time, but instead should await a case-by-case determination. In this regard, it should be pointed out that the circumstances that might support a justifiable leaving today, may well have fallen short in the days when Floyd was decided. Such is the nature of the law and its relationship to changing society.
It may well be that it is my view on society's perception of human nature and the emotional impact that the abandonment of one spouse can have on the other that is at odds with the majority. In my view, a spouse who has been abandoned by his or her loved one may well be devastated by the event, and not want to rush to the courthouse to file for a marriage dissolution or an adjudication of support obligations. Certainly saddling the abandoned spouse with the debts incurred by the errant spouse, necessaries or not, is not equitable in any sense of the concept. The liability of a husband for his wife's necessaries derives from the common law duty of a husband to support his wife. This duty exists for the benefit of the spouse, not for the benefit of creditors supplying necessaries. Therefore, a creditor attempting to enforce a spouse's common law duty is in no better position than the abandoning spouse to which necessaries were supplied. If it would be inequitable to require a spouse to support the other spouse during a certain period, a creditor supplying necessaries to said other spouse during that period should not be able to hold the "innocent" spouse liable therefore. See Schwarz; 41 Am.Jur.2d Husband and Wife §§ 355, 357 (1968); Annot., 60 A.L.R.2d 7 (1958).
Besides my disagreement with the majority on the issue of abandonment, I also dissent from the affirmance of the summary judgment because it appears in the pleadings and the record that Beers may be able to assert the common law defense that services extended to a married woman based solely on her credit do not obligate her husband. See Runkel v. Southeast Palm Beach Hospital District, 453 So.2d 939 (Fla. 4th DCA 1984).
For the foregoing reasons, I dissent from the majority opinion on petition for rehearing.
NOTES
[1] Due to the facts of the instant case, we refer throughout this opinion to a husband's duty toward his wife concerning support and liability for necessaries. We recognize, however, that this duty is gender neutral in Florida. Hence, we note that this decision would be the same if the facts here were reversed and the plaintiff were attempting to impose liability on a wife for her husband's medical expenses. See Parkway General Hospital, Inc. v. Stern, 400 So.2d 166 (Fla. 3d DCA 1981); Manatee Convalescent Center, Inc. v. McDonald, 392 So.2d 1356 (Fla. 2d DCA 1980).
[2] The plaintiff relies on Stern for the proposition that one spouse is always liable for the other spouse's necessaries until a dissolution of the marriage occurs. See 400 So.2d at 167. In Stern, the plaintiff hospital was attempting to recover the hospitalization costs incurred by Mr. Stern from his wife, Mrs. Stern. The case is factually distinguishable in that no issue of abandonment was ever raised. The opinion does state that the only way Mrs. Stern could have averted her liability for the hospitalization costs was to have dissolved the marriage or prevented the illness which required the hospitalization. Although this may have been an overstatement of a spouse's liability for the necessaries of the other spouse, we need not consider the issue because our decision today is not inconsistent with that statement. The statement in Stern, relied upon by the plaintiff herein, indicates that the only affirmative action the wife could have taken to avoid liability was to have had the marriage dissolved. It does not indicate, however, that a spouse cannot raise a defense concerning the conduct of the other spouse, i.e., abandonment, or any other relevant defense. See Runkel v. Southeast Palm Beach Hospital District, 453 So.2d 939 (Fla. 4th DCA 1984); Schwarz.
[3] One case out of this district arguably supports a contrary view. In Novack v. Novack, 196 So.2d 499 (Fla. 3d DCA 1967), the court held that it would not be an abuse of discretion for the trial court to award a wife temporary alimony if she established her need therefor, despite the fact that the husband had asserted that she had abandoned him. Although the court distinguished Floyd by stating the facts were not similar, it does not indicate how they were dissimilar. 196 So.2d at 501. The case would seem to be in direct conflict with the supreme court holding in Floyd. The court specifically held in Floyd that when a husband charges his wife with abandonment in defense of a wife's application for temporary alimony, it is the duty of the court to resolve the issue, and if the wife does not sufficiently refute the charge, an award of temporary alimony is completely barred. 108 So. at 898-99. The court in Novack relied on the decision of Saunders v. Saunders, 183 So.2d 239 (Fla. 1st DCA 1966), for its ruling. Saunders, however, is arguably distinguishable in that the parties there waived the issue of abandonment when neither party offered or submitted any evidence on the matter. 183 So.2d at 242.
[4] The awarding of temporary alimony, which we have discussed in this opinion, is controlled by statute. See § 61.071, Fla. Stat. (1983). The only substantive change in the statute, however, since the supreme court decided Floyd is that it now allows a husband, as well as a wife, to seek relief from the other spouse. The present statute still requires, as did the law in 1926, that the application or petition for the award be "well founded." It is apparent, therefore, that the supreme court's decision in Floyd is still applicable to the statute as it exists today. But see supra note 3. The courts of this state have always recognized that one who abandons his or her spouse has no right to have the abandoned spouse support him or her. See Tigertail Quarries, Inc. v. Ward, 154 Fla. 122, 16 So.2d 812 (1944); Floyd; Thompson v. Thompson, 86 Fla. 515, 98 So. 589 (1923); Ross; Daniel; Schwarz; Stone v. Stone, 151 So.2d 301 (Fla. 3d DCA 1963); Bloom. Cf. Smith v. Smith, 378 So.2d 11, 15 (Fla. 3d DCA 1979) ("it might well be thought improper to permit an errant spouse to destroy a marriage and then to claim benefits equal to those which would have been provided had it remained intact"); accord Pitts v. Pitts, 412 So.2d 404, 405 n. 1 (Fla. 3d DCA 1982).
[1] Although the majority rejects the abandonment defense "as a matter of law," it later states that "[n]othing in the record supports a finding of abandonment by Mrs. Beers." In my view, this latter statement is simply incorrect. (See the affidavits of Virginia Santaniello and Lolan Beers.) Of course, whether an actual abandonment does exist here would be a question of fact to be established by the evidence.
[2] The majority indicates that Beers could have raised abandonment as a legitimate basis to avoid liability in a petition filed pursuant to section 61.10, Florida Statutes (1983). The majority goes on to hold, however, that since Beers did not proceed in such a manner, the issue of abandonment becomes irrelevant to his liability. I see no reason or logic to a holding that the vitality of the issue of abandonment depends upon who brings the matter before the court first. See 41 Am.Jur.2d Husband and Wife § 357 (1968) ("The husband is not required to give notice to the public [of his wife's abandonment] to save himself from liability." [footnote omitted]). Cf. Stone v. Stone, 151 So.2d 301 (Fla. 3d DCA 1963) (courts do not look with favor on a race to the courthouse in marital disputes).